**Robert Preston HAMEL, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 55462.**

Court of Criminal Appeals of Texas, Panel No. 1.

March 28, 1979.

Rehearing En Banc Denied June 20, 1979.

George R. Schilter and Allen C. Isbell, Houston, for appellant.

Ronald L. Wilson, Dist. Atty., and David P. Walker, Asst. Dist. Atty., Galveston, Robert Huttash, State's Atty., Austin, for the State.

Before DOUGLAS, PHILLIPS and W. C. DAVIS, JJ.

## OPINION

DOUGLAS, Judge.

This is an appeal from a conviction for the offense of possession of heroin. Punishment, enhanced by one prior felony conviction, was assessed by the jury at twenty years. The sufficiency of the evidence is not challenged.

Appellant first contends that an incriminating oral statement which was made by him and introduced at trial was the fruit of an unlawful arrest and therefore inadmissible.

On November 28, 1975, appellant's apartment in Texas City was under surveillance by police officer Frank Fleming. At that time, appellant was suspected of burglary and trafficking in narcotics. At 4:00 p. m., appellant left his apartment with Viola McComb, Larry Ellis and Joyce Ellis. The four drove in appellant's car to a Woolco department store and went inside. Officer Fleming followed, waited in the parking lot and radioed to Officer Deril Oliver to assist him. Both officers saw appellant exit the

store alone with something in his hand, look around him and walk to the car. He drove the car to the store entrance where he stopped and continued to look around. Viola McComb, Larry Ellis and Joyce Ellis emerged from the store next. All had objects in their hands and continually looked over their shoulders in a suspicious manner; Larry Ellis appeared to be telling Joyce Ellis to hurry up and get into the car.

On cross-examination Officer Oliver testified:

"First of all, when Hamel went by himself, alone, took the car out of the parking lot, put it up to the main entrance; subsequently Viola came out in a hurry, looking over her shoulder.

"Just a minute or two later, the other two parties came out. They, too, rushed to the automobile, they, too, acted as if they were looking over their shoulder to see if anyone was coming after them.

"We felt something occurred in the store but we didn't know what. We had a pretty good idea."

At the request of Officer Fleming, appellant's car was stopped by Officer Oliver's marked patrol unit on Palmer Highway. Officer Oliver testified that appellant's car was stopped because the officers thought that there was a possibility that the four were shoplifting. On the front console and rear floorboard arresting officers found numerous new, small items with Woolco price tags on them; they were not, however, in bags as if they had been bought. The four were then arrested for shoplifting.

Appellant was taken before Texas City Justice of the Peace Bishop and given the statutory warnings which he stated he understood. Following his admonishment by the magistrate appellant was informed by police officers that his apartment had been under surveillance and that they suspected that it contained narcotics and stolen property. Appellant agreed to sign a consent to search but was not induced to do so by threats, coercion, or physical abuse of any kind. After signing the consent to search, appellant stated to officers: "You're going to find it anyhow. I will tell you there's

some stuff there." He related that police would find heroin in the bathroom linen closet and further stated that the heroin belonged to him and not to Viola McComb with whom he had been living. Appellant requested that Officers Fleming and Oliver not charge McComb with possession of heroin, to which request they agreed. A search of appellant's apartment produced two plastic syringes and a red balloon containing heroin which were found in the bathroom in the precise spot where appellant told police they had been hidden.

Officer Fleming testified that at the time he radioed Officer Oliver to stop appellant's car he had no evidence that appellant had committed a breach of peace or felony upon which he could have obtained a warrant. For this reason, appellant contends his arrest was not made upon probable cause and that the incriminating statement made by him thereafter was inadmissible.

■■■ While this Court has previously held that the inarticulate hunch, suspicion, or good faith of an officer will not constitute probable cause for arrest, search or detention, *Talbert v. State,* 489 S.W.2d 309 (Tex.Cr.App.1973) considerably more than an inarticulate hunch existed in the present case. Appellant's apartment had been watched for a considerable period of time by officers acting upon informant's tips that drug sales were being negotiated inside. Appellant had previous convictions for selling heroin, for burglary, and was further known to Officers Fleming and Oliver as the subject of numerous burglary investigations. Appellant's behavior as a "wheel man" in front of the Woolco store was suspicious, as was the hurried, nervous and watchful behavior of appellant and his companions, all of whom went into the store empty handed but emerged carrying objects in their hands. Such circumstances, while falling short of probable cause, nevertheless justified Officer Oliver's temporary detention of appellant's car. *Mann v. State,* 525 S.W.2d 174 (Tex.Cr.App.1975); *Baity v. State,* 455 S.W.2d 305, cert. denied 400 U.S. 918, 91 S.Ct. 180, 27 L.Ed.2d 158

(1970).[1] Upon detaining appellant and his passengers, Officers Oliver and Fleming saw, lying in the car in plain view, new merchandise which had Woolco price tags but which were not in bags as they would normally be if they had been purchased. At this point the officers were empowered to arrest appellant without a warrant pursuant to Article 14.03, V.A.C.C.P., which provides:

"Any peace officer may arrest, without warrant, persons found in suspicious places and under circumstances which reasonably show that such persons have been guilty of some felony or breach of the peace, or threaten, or are about to commit some offense against the laws. . . . ."

Warrantless arrests pursuant to Article 14.-03 under circumstances comparable to those of the present case have been approved by this Court in *Castillo v. State,* 494 S.W.2d 844 (Tex.Cr.App.1973); *Kwant v. State,* 472 S.W.2d 781 (Tex.Cr.App.1971); *Baity v. State,* supra; *Alaniz v. State,* 458 S.W.2d 813 (Tex.Cr.App.1970); and *Stuart v. State,* 447 S.W.2d 923 (Tex.Cr.App.1969).

■■■■ We conclude that appellant's detention and arrest without a warrant were proper. Even if it had not been, that fact alone would not render appellant's oral statement inadmissible absent a causal connection between the arrest and the confession. *Jurek v. State,* 522 S.W.2d 934 (Tex. Cr.App.1975); *Brantley v. State,* 522 S.W.2d 519 (Tex.Cr.App.1975). In the present case appellant was arrested for shoplifting. After being properly informed of his rights, however, he freely and voluntarily admitted possessing heroin, an unrelated offense. His oral admission led officers to fruits of the crime. Where, as in this case, the requirements of Article 38.22, V.A.C.C.P., are complied with, the defendant acts of his own free will and his statement has not resulted from the arrest itself, his confession is not vitiated by an unlawful arrest.

*Pearson v. State,* 414 S.W.2d 675 (Tex.Cr. App.1967).

He also complains of the admission of heroin into evidence for the same reasons previously advanced. We have already determined that appellant's arrest was lawful. The heroin found in the consensual search of his apartment was not tainted and inadmissible evidence.

■■■■ Appellant next argues that the court erred in admitting both the heroin and his oral confession into evidence on the grounds that the consent to search was not voluntarily given but, rather, induced by a promise not to charge Viola McComb with possession of heroin.

The record reflects that Officers Fleming and Oliver promised not to file a possession charge against Viola McComb after appellant's consent to search had already been executed. Such consent preceded the officers' promise and was not given in response to it or to any kind of physical or mental coercion. The evidence was lawfully obtained; no error is shown.

Hamel next complains that his conviction should be reversed because of his and appointed defense counsel's failure to waive in writing the ten day trial preparation period as required by Article 26.04(b), V.A.C.C.P.

Counsel was appointed on April 19, 1976, and the instant case was tried on April 22, 1976. The record actually reflects that defense counsel was originally retained by appellant in January of 1976 and that he continued to represent appellant in a retained capacity until April 19 when appellant executed a pauper's oath. Although ambiguous on this point, the record seems to indicate that the trial court appointed defense counsel to continue as appellant's attorney on April 21. Both appellant and counsel orally waived additional time and counsel stated to the court that he had represented the appellant in the case for

---

1. The sufficient justification for a police stop in the present case may be contrasted with lack thereof in *Jones v. State,* 567 S.W.2d 209 (Tex. Cr.App.1978), in which a temporary detention was held to be unlawful where appellant was merely walking fast in the company of two black men, put something into his pocket when he saw a police car, and was not known to police as having engaged in or been associated with criminal activity of any kind.

some time, had examined the district attorney's file and was completely knowledgeable about the case.

■■ The purpose of Article 26.04(b) is to guarantee an indigent accused that he and his appointed attorney will have reasonable time in which to prepare a defense. Thus, this Court has gone beyond the appointment time and looked to actual preparation time in determining whether the dictates of Article 26.04(b) have been satisfied. *Henson v. State,* 530 S.W.2d 584 (Tex.Cr. App.1975); *Guzman v. State,* 521 S.W.2d 267 (Tex.Cr.App.1975); *McBride v. State,* 519 S.W.2d 433 (Tex.Cr.App.1974); *Davis v. State,* 513 S.W.2d 928 (Tex.Cr.App.1974). Defense counsel conceded that he had had more than three months to prepare for trial. There is no showing that additional time was needed, requested or wanted. See *King v. State,* 466 S.W.2d 322 (Tex.Cr.App. 1971). Under these facts reversal is not required.

■ Appellant argues that the court erred in overruling his motion for mistrial following the testimony of Officer Fleming that appellant was arrested and charged with shoplifting. Appellant's objection was sustained and a requested jury instruction to disregard was given. Error, if any, was cured. *Sternlight v. State,* 540 S.W.2d 704 (Tex.Cr.App.1976); *Smith v. State,* 540 S.W.2d 693 (Tex.Cr.App.1976); *Marlow v. State,* 537 S.W.2d 8 (Tex.Cr.App.1976).

■ Grounds of error eight and nine complain of the prosecution's failure to lay a proper predicate for the introduction of State's Exhibits one and two. These exhibits were, respectively, the statutory warning read by Judge Bishop and the written consent to search executed by appellant. Appellant asserts that such documents were not properly authenticated under the Business Records Act, V.A.T.S., Article 3737e. This contention is without merit. Officer Fleming identified State's Exhibits one and two as the magistrate's warning and consent to search which were signed by Judge Bishop in his presence on November 28, 1975 and which had remained in his constructive custody since that time. A predicate for their admission was sufficiently laid. *Gonzales v. State,* 494 S.W.2d 912 (Tex.Cr.App.1973). The ground of error is overruled.

No error having been shown, the judgment is affirmed.

W. C. DAVIS, Judge, concurring.

I agree with the result reached in Judge Douglas' majority opinion. However, I would add that the authority to arrest in this situation could be derived from Art. 14.03 or Art. 18.16, Vernon's Ann.C.C.P.

The point at which the majority and dissent take separate roads is in the determination of the existence of probable cause to arrest, following an investigatory stop. Everyone agrees that the detention to investigate a possible theft was justified.

The dissent argues that the investigation by the officers did not result in additional information which would permit an arrest under Art. 14.03. On this point, the dissent argues that the only supportive evidence found during the investigation was the presence of several unbagged items with the store's price tag still affixed. "It is common knowledge," states the dissent, "that many people, for a variety of reasons, decline to have their goods bagged after purchasing them legitimately."

The dissent overlooks one other supportive fact which is also common knowledge. This fact, when considered with the total circumstances, provides probable cause to arrest under either Article 14.03 or Article 18.16, Vernon's Ann.C.C.P.

During the course of their investigation, the officers observed several unbagged items with the price tags still affixed. Two of these items, a bottle of cologne and writing tablets, were observed in the floorboard of the vehicle, a Ford Mustang. Surely, it is equally a matter of common knowledge

that persons who have legitimately purchased new writing tablets do not place them uncovered in the floorboard of a Ford Mustang occupied by four people where they are assured of becoming soiled. The reasonable inference from such activity is an attempt to conceal, and thus is supportive of probable cause. *Brown v. State,* 481 S.W.2d 106 at 110 (Tex.Cr.App.1972).

Can it be doubted on the facts in this record that appellant and his companions could have been required to return to the store for further inquiry. Such a detention could only be characterized as an arrest. Instead, the officers chose to take appellant before a magistrate and, whether knowingly or not, complied with the procedures of Art. 18.16, Vernon's Ann.C.C.P.

Having concluded that appellant's arrest was valid under either Art. 14.03 or Art. 18.16, I agree with the majority upholding the consent search which produced the heroin.

PHILLIPS, Judge, dissenting.

In disposing of appellant's grounds of error which challenge the admissibility of his oral statement and evidence seized pursuant to his consent to search, because of an illegal arrest, the majority concludes that the arrest and detention were proper.

In disposing of appellant's contention concerning the admissibility of his oral statement, the majority uses a standard of review previously applied only to determining whether a statement or confession is admissible when given without benefit of a magistrate's warning. To succeed on such a contention, the appellant has traditionally been held to the burden of establishing a causal relationship between the lack of warnings and the giving of the confession. The majority ignores the rule of *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). The majority, as did the Illinois Supreme Court in *Brown v. Illinois,* supra, views the problem as primarily

one of voluntariness. That case held that a confession given following an illegal arrest was inadmissible unless the State proved the taint of the illegal arrest was sufficiently attenuated. That Court ruled that *Miranda*[1] warnings were a factor, but *alone* did not attenuate the taint of an illegal arrest. See also *Wong Sun v. U. S.,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The case is not even mentioned by the majority.

The majority concludes that the warrantless arrest of the appellant and his passengers was authorized under Article 14.03, V.A.C.C.P.

No motion to suppress the evidence or the confession was filed prior to trial. However, prior to the two involved police officers testifying to the confession and consent to search and what the search revealed, the jury was excused and a hearing conducted before the trial judge during which an objection was entered to the admissibility of the evidence involved. The evidence consisted of a balloon of heroin found in an apartment occupied by the appellant and the appellant's statement to the police that they would find heroin in a particular place in the apartment. An examination of the witnesses outside the presence of the jury revealed that the appellant's apartment was under surveillance because he was suspected of trafficking in narcotics. At approximately 4 p. m. the appellant and three others were observed leaving the apartment and travelling by automobile to a Woolco Department Store. All four entered the store. After the four had entered the store, Officer Oliver arrived at the scene at the request of Officer Fleming. They both observed the appellant leave the store with "something" in his hands and go to his car. He drove the car to the front of the Woolco store and waited for the three others. Next came Viola McComb who entered the car. Then the Ellises exited and proceeded to the car. The police officers testified that McComb and the Ellises appeared to be in a

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

hurry and looked around them as they exited the Woolco store. It was also adduced that all four people exited the store with items in hand, but not in bags. The four then departed and the police officers radioed for another marked patrol unit to stop the appellant's vehicle on Palmer Highway. After the vehicle was stopped, the police officers approached and observed in open view several items with Woolco price tags in the front and back of the vehicle. The four were then arrested for shoplifting and transported to the Texas City Police Department. Only the appellant was then taken before a magistrate for purposes of being warned of his rights. See Article 15.17, V.A.C.C.P. After receiving these warnings, the appellant executed a consent form for the search of his residence and made the complained of statement.

The first question to be addressed is whether the police officers had probable cause to stop the appellant and his vehicle for investigative purposes.

". . . Probable cause for an officer to detain a person temporarily for investigative purposes exists where the circumstances reasonably indicate that that particular person either has or is preparing to commit a crime.[7] . . .

7. Circumstances falling short of probable cause for an arrest may justify temporary detention for purposes of investigation, since an investigative stop is considered to be a lesser intrusion upon the personal security of the individual than is an arrest. [Citations omitted.]" *Brown v. State*, 481 S.W.2d 106 at 110.

The police officers testified that they were familiar with the appellant through their previous investigations of burglaries and his reputation for trafficking in narcotics. One of the police officers testified that he knew appellant to be a thief. However, they denied any awareness of the appellant being engaged in shoplifting previous to this occasion. The question then becomes whether the nature of the appellant's and the three others' conduct in exiting the Woolco store warranted the police officers in stopping their vehicle for investigative

purposes. Since an investigative stop is a lesser intrusion, more leeway is given to the police officers' discretion. We cannot conclude that it was unreasonable for the officers to stop the appellant for investigative purposes under the circumstances described here.

The next order of inquiry is to determine whether after this authorized stop for investigative purposes the police officers had probable cause to arrest the appellant. The only evidence adduced as to what the police officers discovered after the investigative stop was the fact that there were items in the automobile with Woolco price tags on them. There is no evidence of any inquiry concerning sales receipts by the police officers. Based merely on the observation of these items in the vehicle, the appellant and the others were arrested.

"Probable cause for an arrest exists where, at that moment, the facts and circumstances within the knowledge of the arresting officer and of which he has reasonably trustworthy information would warrant a reasonable and prudent man in believing that a particular person has committed or is committing a crime. [Footnote and citations omitted.]" *Id.* at 110.

The majority attempts to uphold this arrest on the basis of Article 14.03, V.A.C.C.P. It is clear from a reading of that provision that an arrest without a warrant is authorized when the peace officer finds persons "in suspicious places and under circumstances which reasonably show that such persons have been guilty of some felony or breach of the peace, . . . ." The majority goes on to note that "[W]arrantless arrests pursuant to Article 14.03 under circumstances comparable to those of the present case have been approved by this Court in *Castillo v. State*, 494 SW.2d 844 (Tex.Cr.App.1973); *Kwant v. State*, 472 S.W.2d 781 (Tex.Cr.App.1971); *Baity v. State*, [455 S.W.2d 305]; *Alaniz v. State*, 458 S.W.2d 813 (Tex.Cr.App.1970); and *Stuart v. State*, 447 S.W.2d 923 (Tex.Cr.

App.1969)." A cursory review of the authorities relied upon by the majority for the proposition set forth clearly shows those cases to be inapposite. In *Castillo*, supra, two men were observed by the police officer at 12:35 a.m. in an alley in El Paso walking rapidly towards a parked auto. After driving off, the police officer stopped them and asked for identification. He observed that they were perspiring, had bloodstained and dirty clothing, and gave conflicting stories for their presence in the alley. After calling another unit, it was discovered that a meat company door was forced open and a cold side of beef, an adding machine and calculator were found in the alley. The two men were then arrested. In *Kwant*, supra, police officers set up surveillance of an apartment after receiving a tip that there was approximately 90 pounds of marihuana in the apartment. The police officers arrested a male who left the apartment with a bag and found it to contain marihuana. Later, the appellant arrived on a motorcycle and another individual arrived in a Corvair, empty-handed. They both left the apartment together and put two bags in the trunk and left. After radioing this information to other officers, the Corvair was followed, stopped, and a search of the trunk revealed the bags to contain marihuana. An arrest was then effected. In *Baity*, supra, a police officer with 13 years' experience observed a man enter an alley and suddenly turn back out at 4:56 a. m. in the downtown area, walking fast with his coat pulled up tight. The police officer recognized the defendant from previous theft and burglary arrests. He then stopped the appellant and observed a nail bar (crowbar) under the defendant's coat. After observing another object concealed in the coat, the police officer asked what it was and the appellant indicated it was a coin box. The police officer took the appellant to a nearby cafeteria and observed pry marks on a vending machine and noticed the coin box missing. This Court concluded that the investigative stop of the appellant was appropriate under the circumstances, as I have

concluded already in this case, but that there was no search since the evidence involved was in plain view. The Court merely directed the reader's attention to Article 14.03, V.A.C.C.P., and the inherent right to search an arrestee incident to his arrest. There was no language indicating that the conclusion of the Court was predicated on the authority to arrest without a warrant under Article 14.03, supra. In *Alaniz*, supra, police officers were driving down a gravel "lovers' lane," known for parking and drinking, at approximately 5 p. m. when they observed a pickup truck and station wagon occupied by two men parked on the side of the road. As they made the second passby, they observed the appellant throw a paper out. The police officers retrieved the paper and found it to contain marihuana. Alaniz was arrested. In *Stuart*, supra, the police officers observed the appellant running from a clothing store with suits of clothes in hand at 1:30 a. m.

In the case at bar, the appellant was observed exiting a Woolco store during business hours, picking up three of his companions that he arrived with, carrying items not in bags, and driving off. There is no testimony that any traffic violations were committed by the appellant. He was then stopped on Palmer Highway. By no stretch of the imagination can this be considered a "suspicious place." Further, the circumstances here, although deemed sufficient to authorize a stop, are not sufficient to authorize an arrest. The discovery of the items to contain Woolco price tags adds nothing to the previous observations and cannot be considered sufficient to justify the appellant's arrest. The police officers testified that they had no knowledge of anything being stolen from the Woolco Department Store nor did they observe any felony or breach of the peace committed in their presence. Furthermore, the circumstances described in this record cannot be construed to provide "reasonable ground[s] to suppose the property to be stolen, . . . ." The majority places great emphasis on the fact that the items were not bagged. It is com-

**432**

mon knowledge that many people, for a variety of reasons, decline to have their goods bagged after purchasing them legitimately. Therefore, there was no probable cause to arrest the appellant under Article 18.16 or 14.03, V.A.C.C.P. The police officers testified that no offense was committed within their view, therefore negating any basis for an arrest under Article 14.01, V.A.C.C.P. There was no representation by any credible person that a felony had been committed and that the appellant was about to escape in order to justify an arrest under Article 14.04, V.A.C.C.P. Thus, I must conclude that this arrest was lacking in probable cause and was therefore unlawful.

We turn now to the determination of what effect this unlawful arrest had upon the appellant's purported consent to search his home. As this Court stated in *Armstrong v. State*, 550 S.W.2d 25:

"The 'fruit of the poisonous tree' doctrine explained at length in *Wong Sun v. United States*, [supra, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)], serves to exclude as evidence not only the direct products but also the indirect products of Fourth Amendment violations. Evidence is not classified as a fruit requiring exclusion, however, merely because it would not have been discovered 'but for' the primary invasion.

'Rather, the more apt question in such a case is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." ' *Wong Sun v. United States*, 371 U.S. at 488, 83 S.Ct. at 417, 9 L.Ed.2d at 455.

"When it has been established that there was an illegal seizure, the State 'has the ultimate burden of persuasion to show that its evidence is untainted . .

. [B]ut at the same time [the defendant] . . . must go forward with specific evidence demonstrating taint.' *Alderman v. United States*, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969)." *Armstrong v. State*, supra, at 31.

Again, from the same case:

"And it has been said that consent by the defendant, *if sufficiently an act of free will to purge the primary taint* of the unlawful arrest or detention (*Wong Sun v. United States, supra*, 371 U.S. at 486, 83 S.Ct. at 416) may produce the requisite degree of 'attenuation.' [Citations omitted.]" (Emphasis added.)

\* \* \* \* \* \*

"The issue of whether consent to a search was in fact voluntary or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); [Citations omitted]." *Armstrong v. State*, supra, at 31–32.

The record in this cause reflects that the appellant was arrested at approximately 4:50 p. m. on November 28, 1975. The record does not disclose whether the appellant was given his *Miranda* warnings at that time. There is an indication in the record that the arresting officer advised the appellant of his right to an appointed attorney, his right to an examining trial, his right to terminate the interview at any time, his right not to make a statement but that any statement made could be used against him and that the appellant understood these warnings. The record further reflects that at 5:50 p. m. on the same day the appellant was advised, by a magistrate, of his rights under Article 15.17, V.A.C.C.P. The arresting police officers were present while the warnings were given and testified that the appellant indicated he understood the warnings. At approximately 5:55 p. m., the appellant executed his "Waiver of

Search" form.[2]  It is noted that this consent form does not reflect that the appellant was advised of his right to refuse a search. The record also reflects that the appellant was never warned of his right to refuse such a search.[3]  The record also reflects that the appellant had previously been convicted for the unlawful sale of heroin and burglary on the same day in 1972. Of additional significance to the determination of whether the appellant's consent to search was a sufficient act of free will to purge the primary taint or was an exploitation of the initial taint is the testimony of the arresting officers that the appellant was the only one taken before a magistrate for statutory warnings "[B]ecause he was the one we wanted to talk to." The police officers admitted that they had a special interest in the appellant for narcotics. Appellant contends throughout his brief that this arrest was a pretext arrest in order to effectuate what the police officers could not otherwise do, i. e., search the appellant's house. Finally, it is noted that the consent form was executed in the office of the magistrate and was signed by the magistrate.

The case of *Brown v. Illinois*, 422 U.S. 603, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), is instructive in disposing of appellant's contention concerning the consent to search as a fruit of the illegal arrest. The court in *Brown v. Illinois*, supra, wrote:

"The *Miranda* warnings are an important factor, to be sure, in determining whether the confession [consent] is obtained by exploitation of an illegal arrest. But they are not the only factor to be considered. The temporal proximity of the arrest and the confession [consent], the presence of intervening circumstances, and, particularly, the purpose and flagrancy of the official misconduct are all relevant. See *Wong Sun v. U. S.*, [supra, 371 U.S., at 491, 83 S.Ct., at 419]. The voluntariness of the statement [consent] is a threshold requirement. And the burden of showing admissibility rests, of course, on the prosecution." [Citations and footnotes omitted.] *Id.*, U.S. at 603–604, 95 S.Ct. at 2261–2262.

In the case at hand, the consent form was signed an hour and five minutes after the illegal arrest. The only intervening circumstances were the delivery of the warnings under Article 15.17, V.A.C.C.P., and the questioning of the appellant by the officers. Furthermore, the testimony of these officers indicates, as the record did in *Brown*, that the illegal arrest had "a quality of purposefulness." The arrest was investigatory in purpose and the officers indicated that one of their interests was to investigate their suspicions of the appellant as a drug trafficker. There is no indication of any warning given concerning the appellant's right to refuse the search. It is clear such a warning is not required when noncustodial consent to search is sought. See

---

**2.**  State's Exhibit No. 2:

"WAIVER OF SEARCH"

STATE OF TEXAS
COUNTY OF GALVESTON

I, Robert Creston Hamel, who reside and occupy the premises at 2902 Dallas Ave. apt 67 in the City of Dallas City Dallas . do hereby give [illegible] an Officer of the Dallas City Police Department, permission to search the premises at 2902 Dallas Ave Apt 67 , in the City of Dallas City , Galveston County, State of Texas. Said permission is given with my consent at my own free will. I can read and write the English language.

Robert Hamel

Sworn to and subscribed before me this the 21 day of ___, A. D., 19 71.

[illegible signature] Ex. #
Defendant's Ex. #
4-5-76
WINIFRED McGAR
Official Court Reporter

Notary Public in and for Galveston County, Texas

MAGISTRATE
JUDGE of ___ COURT
GALVESTON COUNTY, TEXAS 5:55

**3.**  We understand that the failure to warn an individual of this right to be free from unreasonable searches and seizures is not fatal to consent given under noncustodial circumstances. See *Schneckloth v. Bustamonte*, supra. However, it is an important evidentiary factor in determining whether the consent was a sufficient act of free will to purge the primary taint of this illegal arrest.

*Schneckloth v. Bustamonte,* supra. It is also not necessary in this State after an arrest, but is good police practice. See *DeVoyle v. State,* 471 S.W.2d 77 (Tex.Cr.App.). As the Supreme Court stated in *Brown v. Illinois,* supra:

"Wong Sun thus mandates consideration of a statement's [consent] admissibility in light of the distinct policies and interests of the Fourth Amendment." 422 U.S. at 602, 95 S.Ct. at 2261.

Those policies were identified as deterrence of lawless conduct by officers of the law and the protection of judicial integrity. Although the federal courts have abdicated to some degree from the latter justification, there is no reason for this Court to turn a blind eye to the question of integrity. Thus, we must conclude that the policies of our Article I, Section 9 include both the Fourth Amendment policy of deterring unlawful police conduct and the independent interest of maintaining the integrity of our State courts from utilization of unlawfully obtained evidence. See also Article 38.23, V.A.C.C.P.

I would conclude that the consent to search form executed by the appellant in this case was a direct exploitation of his initial unlawful arrest and there were no sufficient intervening circumstances or other occurrences, within the totality of circumstances confronting the appellant, which made his consent a sufficient act of free will to purge the primary taint of his unlawful arrest. Thus, the consent form executed by the appellant and the evidence seized by the officers pursuant to that consent should have been excluded by the trial court.[4] The failure to exclude such evidence constitutes reversible error, for without it appellant's oral statement to the police officers could not have been corroborated, assuming for the moment that that confession was admissible. See Article 38.-22(1)(e), V.A.C.C.P.[5] The evidence was unquestionably incriminatory and harmful.

4. If the warnings were alone sufficient to purge the taint of unlawful arrests, the warnings would become a "cure-all" for violations of the Fourth Amendment to the U.S. Constitution and Article I, Section 9, Texas Constitution.

Turning now to the admissibility of appellant's oral statement to the police officers telling them where the "stuff" would be in his residence and that the "stuff" was heroin, I must conclude that that statement was a direct result of the police officers' exploitation of their initial unlawful arrest. *Brown v. Illinois,* supra, applies with even more force to this issue and mandates my conclusion. I would also hold that that confession was inadmissible as the fruit of the officers' breach of Article I, Section 9 of the Texas Constitution.

The inescapable conclusion is that appellant's conviction should be reversed. For the foregoing reasons I strongly dissent.

5. See Article 38.23(c), V.A.C.C.P., effective August 29, 1977.