**Tallie HOLLAND, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 05–89–00636–CR.**

Court of Appeals of Texas,
Dallas.

March 21, 1990.
Rehearing Denied April 26, 1990.

Donald C. Adams, Irving, for appellant.

Yolanda Joosten, Dallas, for appellee.

Before WHITHAM, ROWE and BAKER, JJ.

OPINION

WHITHAM, Justice.

Appellant appeals a conviction for possession of cocaine. In his first point of error, appellant contends that the trial court erred in denying appellant's motion to suppress. We agree. Accordingly, we reverse and remand.

On January 7, 1989, Officer Javier Leal and his partner were dispatched to 435 Wheatland, apartment 1088, Dallas, Texas. Upon arrival, Officer Leal observed several children outside the door of the apartment. The children were highly upset, screaming "he hit me" or "he has got a hammer." Leal identified one of the children as a resident of the apartment—Nicole. Nicole told Leal that appellant, who was inside the apartment, was very upset and was intoxicated. Nicole went on to tell Leal that appellant, seeing the children inside of the apartment, told them to leave—that this was his apartment and he could do whatever he wanted. Nicole related that at one point, appellant got a hammer and apparently began swinging it around, trying to frighten the children, however, at no time did Leal see a hammer. After determining that both appellant and Nicole had a right to be in the apartment, Leal was admitted into the apartment by Nicole. Nicole informed Leal that appellant was in the back room. Leal and his partner proceeded to the back room where they found appellant, who smelled of alcohol. Appellant was agitated and kept repeating that he "wanted those kids out of here." Appellant told the police, "I called you guys. Now, you do what I say." Appellant refused to calm down and the police were unable to talk to him. After obtaining further information from Nicole, the police arrested appellant for committing a terroristic threat. Leal testified that because of appellant's uncooperative attitude and the information obtained from Nicole, he believed that if appellant was left in the apartment, there would be violence between appellant and Nicole. Leal believed appellant to be guilty of threatening Nicole and that appellant would carry out his threat if the police were not there. Appellant was then taken to Lew Sterrett Jail. During a routine inventory search pursuant to detention, a small baggie containing what appeared to be crack cocaine was discovered in appellant's pocket. Appellant was then arrested for possession of a controlled substance.

▮▮▮ It is undisputed that appellant was not arrested pursuant to an arrest warrant. As a general rule, police officers must always obtain an arrest warrant prior to taking someone into custody. *Dejarnette v. State*, 732 S.W.2d 346, 349 (Tex. Crim.App.1987). There are, however, exceptions to this rule which are set out in chapter 14 of the Texas Code of Criminal Procedure. These exceptions to the warrant requirement are strictly construed. *Dejarnette*, 732 S.W.2d at 349. These exceptions are encompassed within articles 14.01, 14.02, 14.03 and 14.04 of the Texas Code of Criminal Procedure. Once a defendant has established that a search or seizure has occurred and that no warrant was obtained, the burden shifts to the State to show that the arrest was within an exception to the warrant requirement. *Beasley v. State*, 728 S.W.2d 353, 355 (Tex.Crim. App.1987). Further, the constitutional validity of a warrantless arrest can only be decided by the specific factual situation in each individual case. *King v. State*, 631 S.W.2d 486, 497 (Tex.Crim.App.), *cert. denied*, 459 U.S. 928, 103 S.Ct. 238, 74 L.Ed.2d 188 (1982). Under the facts, articles 14.01 and 14.02 are inapplicable; no offense was committed within the view of a peace officer or magistrate. *See Johnson v. State*, 722 S.W.2d 417, 420 (Tex.Crim. App.1986), *overruled on other grounds*, *McKenna v. State*, 780 S.W.2d 797, 800 (Tex.Crim.App.1989). Likewise, article 14.-04 is inapposite because there is no indication whatsoever that a felony had been committed—the type of terroristic threat alleged herein being a misdemeanor. *See* TEX.CODE CRIM.PROC.ANN. art. 14.04 (Vernon 1977); *see also* TEX. PENAL CODE ANN. § 22.07(a)(2) & (b) (Vernon 1974). Similarly, article 14.03(a)(2) and (4) (assaults re-

sulting in injuries), 14.03(a)(3) (violation of a court order), 14.03(b) (reasonably necessary to verify allegation of violation of protective order or of commission of assault against member of family or household, officer remains at scene of investigation to verify allegation and prevent further family violence) and 14.03(c) (peace officer outside jurisdiction) do not apply in this case. Indeed, the State relies solely upon the provisions of 14.03(a)(1) which provide:

Any peace officer may arrest without warrant: persons found in suspicious places and under circumstances which reasonably show that such persons have been guilty of some felony or breach of the peace, or threaten, or are about to commit some offense against the laws.

Our focus is upon the first part of 14.03(a)(1)—"persons found in suspicious places." Because we conclude that appellant was not found in a "suspicious place," we do not reach the second required prong of the test afforded by 14.03(a)(1) that the accused be found "under circumstances which reasonably show that such persons have been guilty of some felony or breach of the peace, or threaten, or are about to commit some offense against the laws."

The determination of whether a place is a "suspicious place" is highly fact-specific. *See King*, 631 S.W.2d at 497. In light of this, several examples of "suspicious places" are in order. In the case of *Douglas v. State*, 679 S.W.2d 790 (Tex.App.—Fort Worth 1984, no pet.), the court held that the defendant's house was a suspicious place since (1) there was a dead body lying in the front yard, (2) the police were informed that the defendant was "in there [the house]," (3) defendant had been seen near the body and had put something in a car parked outside the house and (4) defendant had run back into the house upon being seen by a witness. These circumstances were sufficient for the court to hold that defendant, arrested inside his own home, was "in a suspicious place." *Douglas*, 679 S.W.2d at 790–91. In *Thomas v. State*, 681 S.W.2d 672 (Tex.App.—Houston [14th Dist.] 1984, pet. ref'd), the court, while noting that "there is nothing

inherently suspicious about members of a neighborhood walking down the street carrying something in broad daylight," held that since (1) one of the men was carrying a television set, (2) the men deposited some property in an abandoned house and (3) the arresting officer knew that at least one house in the neighborhood had been recently burglarized, the defendant was in a "suspicious place"—in this case, the street. *Thomas*, 681 S.W.2d at 674, 676. In *Hamel v. State*, 582 S.W.2d 424 (Tex.Crim.App. [Panel Op.] 1979), the Court held that the detention of defendant's car (and defendant) was reasonable in light of the following: (1) defendant's behavior at the time, (2) defendant's apartment had been under surveillance for some time by officers acting on informant's tips, (3) defendant had previous convictions which the officers knew of and (4) defendant was known by the officers as the subject of numerous burglary investigations. Thus, the Court held that the defendant's car was a "suspicious place" under the facts. *Hamel*, 582 S.W.2d at 426–27. In *Mitchell v. State*, 756 S.W.2d 71, 74 (Tex.App.—Texarkana 1988, no pet.), the court held that "[t]he presence of a stolen vehicle in [defendant's] yard [could] reasonably be considered to qualify the yard and house as a suspicious place." This Court, in *Wilson v. State*, 722 S.W.2d 3, 4 (Tex.App.—Dallas 1986, no pet.), held that the defendant's apartment was a suspicious place because (1) a car registered to defendant had been used in a robbery shortly before the arrest, (2) defendant was identified as the probable culprit and (3) defendant's apartment had been placed under surveillance in the belief that defendant could soon be found there. Finally, in *Sheffield v. State*, 647 S.W.2d 413, 415 (Tex.App.—Austin), *pet. ref'd per curiam*, 650 S.W.2d 813 (Tex.Crim.App. 1983), the court held that the defendant's actions prior to an investigatory stop combined with the police officers' knowledge of a recent theft in the area by a man matching defendant's description was sufficient to justify an investigatory stop—holding that the defendant's location had become a "suspicious place." *See also Johnson*, 722

S.W.2d at 419–20 (suspicions of police aroused by circumstances and actions of "maintenance man" who arrived to clean up mess from stabbing); *Battles v. State,* 626 S.W.2d 149, 150 (Tex.App.—Fort Worth 1981, no pet.) (defendant in "suspicious place" where found in complainant's house with gun in hand after call for discharge of firearms—defendant in view of police and homeowner directed police to defendant).

 Before proceeding to the specific facts of this case, we note that "few, if any, places are suspicious in and of themselves. Rather, additional facts available to an officer plus reasonable inferences from those facts in relation to a particular place may arouse justifiable suspicion. We also recognize that 14.03 *should be applied to authorize warrantless arrests in only limited situations.*" *Johnson,* 722 S.W.2d at 421 (emphasis added). We conclude that the present case is not one of those "limited situations." We reach this conclusion because there are no such clear indicia of suspicion. Appellant was found in the back room of his own apartment. No hammer was found. There were no stolen items present, and no contraband was in sight. Appellant was agitated and smelled of alcohol, but neither of these constitute circumstances which would transform the site into a "suspicious place." Officer Leal believed that appellant had committed a terroristic threat (a misdemeanor) and might carry out his threat if not arrested, but there is no exception to the warrant requirement for this type of conduct. In short, the sole reasons for the arrest were the officers' probable cause to believe that appellant had already committed (and completed) a misdemeanor offense and that he might commit another offense if not arrested. Thus, "the facts of this case are indicative of nothing that would characterize the [apartment] as a suspicious place." *Lowery v. State,* 499 S.W.2d 160, 164 (Tex. Crim.App.1973). It follows that since appellant was arrested without a warrant and no exception to the warrant requirement applies, appellant's arrest was illegal. In light of this conclusion, it follows that the cocaine discovered as a result of a routine inventory search pursuant to appellant's

incarceration for the illegal arrest must be suppressed as the "fruit of the poisonous tree" of the illegal arrest. *See Wong Sun v. United States,* 371 U.S. 471, 484–86, 83 S.Ct. 407, 415–17, 9 L.Ed.2d 441 (1963); Tex.Code Crim.Proc.Ann. art. 38.23(a) (Vernon Supp.1990). Therefore, we sustain appellant's first point of error, reverse the judgment of the trial court and remand this cause to the trial court for further proceedings consistent with this opinion. In light of our disposition of the appeal, we need not reach appellant's remaining point of error in which he contends that the trial court committed reversible error when the State failed to introduce any evidence that the offense occurred in Dallas County, Texas.

Reversed and remanded.