Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio



**MEMORANDUM OPINION**

No. 04-09-00319-CR

Dean Robert **CARDELLA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 216th Judicial District Court, Bandera County, Texas
Trial Court No. CR-06-110
Honorable Stephen B. Ables, Judge Presiding

Opinion by:  Karen Angelini, Justice

Sitting:  Karen Angelini, Justice
Phylis J. Speedlin, Justice
Rebecca Simmons, Justice

Delivered and Filed:  September 1, 2010

AFFIRMED

Dean Robert Cardella appeals his conviction for the offense of deadly conduct. In two issues on appeal, Cardella contends (1) the evidence is legally and factually insufficient to support the finding of guilt and (2) the trial court erred in denying his pre-trial motion to suppress the arrest. We overrule both issues and affirm the trial court's judgment.

## PROCEDURAL AND FACTUAL BACKGROUND

Cardella was indicted on a charge of deadly conduct by knowingly discharging a firearm at and in the direction of Kenneth Hicks. Cardella filed a motion to suppress, which was denied. He then pled not guilty, and a jury trial ensued. At the close of the evidence, the jury found Cardella guilty, and the trial court sentenced him to a ten-year probated sentence.

During the presentation of the evidence, the complainant, Hicks, testified that he had been employed by Cardella for about seventeen and one-half years in the air conditioning and heating business. According to Hicks, several years ago, he began living in a small house located on Cardella's property, which was about 125 to 150 feet from Cardella's house. Hicks testified that he and Cardella were good friends and had a good business relationship. However, during the first part of 2006, because there was not much air conditioning or heating work to do, Hicks began looking for other work. As a result, Hicks stopped working for Cardella, causing Cardella to tell Hicks he needed to move off the property. Hicks refused to leave and told Cardella that he would not leave unless evicted.

Hicks testified that on May 15, 2006, he got home at about 9:30 p.m. when Cardella, who was quite intoxicated, approached him and began ranting and raving. Hicks saw Cardella's ex-girlfriend, Corenia Maki, getting into her truck and start to leave. Hicks testified Cardella began yelling at him to move off the property. According to Hicks, he and Cardella were standing between the two houses, with Hicks standing in front of the house he had been living in. Cardella then approached Hicks, splashed Hicks with a drink, and pulled a pistol out from his shorts. Hicks stated that as Cardella pulled the gun out, he fired, and the bullet went right by Hicks's shirt. Hicks testified that when Cardella fired the gun, it was pointed waist high toward him. According to Hicks, he and Cardella were about four feet apart, and he felt his shirt flutter when

the bullet passed by his left side. Hicks testified that he believed the bullet probably ended up in the ground behind him. Both men then returned to their respective houses, and Hicks called the police. The police arrived and, after questioning Hicks, arrested Cardella.

Cardella testified that Hicks had worked for him about fourteen or fifteen years. However, according to Cardella, in 2006, he had to terminate Hicks's employment because he discovered Hicks was a thief. So, in April 2006, Cardella fired Hicks and told him to move out of the house. According to Cardella, he gave Hicks until May 15th to vacate the house. Cardella also testified that on May 5, 2006, Hicks made a finger gesture toward him "like [Hicks] was pulling a trigger." Also, around the same time period, Hicks pointed a rifle at Cardella.

Cardella testified that on the night of the shooting, he and Corenia Maki were standing on his porch talking. Cardella then saw Hicks drive into the driveway and park. Cardella testified that because Hicks began walking toward him, he picked up his gun from a drawer in the foyer of his house. Maki moved toward her truck to leave. Cardella testified that Hicks came across the yard, walking with a rapid gait. Cardella then approached Hicks and told him to get off Cardella's property. The men confronted each other between the two houses. Cardella testified that he had an alcoholic drink in his hand. According to Cardella, there was a verbal exchange between the two men, Hicks shoved Cardella in the chest, and the gun discharged. Cardella testified that he had been holding the gun in his right hand by his knee when it discharged into the ground. According to Cardella, he did not raise the gun waist high and point it at Hicks. Cardella stated that if he had, the bullet probably would have gone into Hicks's house or truck. According to Cardella, the way the gun accidentally discharged was by him pulling the trigger. He further explained that this gun was a hammerless gun, and the only way a hammerless gun can fire is by pulling the trigger the full distance. In other words, there is no way the hammer is

going to accidentally shoot. After the gun was fired, Cardella told Maki to leave, retreated to his house, and called 9-1-1. He put the gun on the headboard of his bed.

Also at trial, Carlos Reyes, a sheriff's deputy, testified that he was dispatched to the disturbance involving Hicks and Cardella. When he arrived, Cardella was waiting at the driveway entrance. According to Reyes, Cardella was calm and smelled of alcohol. Cardella said that he and Hicks had argued and that he told Hicks to vacate the property. Cardella did not mention anything about discharging a firearm. Reyes testified that he then talked with Hicks who related different facts about the incident. According to Reyes, Hicks had a stain on the front of his shirt that smelled like alcohol. After speaking with Hicks, Reyes went to speak again with Cardella who had gone into his house. Reyes testified he asked Cardella if he owned a revolver, and Cardella answered that he did. Reyes asked to see the revolver and followed Cardella into the bedroom where the revolver was on the headboard of the bed. Reyes testified that he then retrieved the revolver. Reyes checked the revolver and saw that it was loaded with four rounds of .357 magnum jacketed hollow points and one round of a .38 caliber lead round nose. The handgun itself was a .357 magnum, which holds five rounds. Reyes testified that as he handled the gun, he could smell an odor of freshly burnt gunpowder, which led him to believe that the gun had been fired recently. Reyes then secured the gun in his vehicle. According to Reyes, Deputy Wilson arrived. Reyes told Deputy Wilson that he was going to arrest Cardella. Reyes then proceeded to arrest Cardella. According to Reyes, there would not be any shell casings in the area because the shells stay within that particular handgun until it is unloaded. Reyes also testified that he did not see any shell casings in the area because it was too dark. Reyes did not see any holes in the walls of the house Hicks was staying in. Reyes further testified that the only way to fire a hammerless revolver is to pull the trigger.

**LEGAL AND FACTUAL SUFFICIENCY OF THE EVIDENCE**

When reviewing a case on appeal for legal sufficiency of the evidence in a criminal case, we review all of the evidence in a light most favorable to the verdict and decide if any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006).

When considering the factual sufficiency of the evidence, we review the evidence in a neutral light. *Roberts v. State*, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007). "Evidence can be factually insufficient in one of two ways: (1) when the evidence supporting the verdict is so weak that the verdict seems clearly wrong and manifestly unjust, and (2) when the supporting evidence is outweighed by the great weight and preponderance of the contrary evidence so as to render the verdict clearly wrong and manifestly unjust." *Id.* We may not reverse a conviction for factual sufficiency if "the greater weight and preponderance of the evidence actually favors conviction." *Id.*

The jury, as trier of fact, "is the sole judge of the credibility of the witnesses and of the strength of the evidence." *Fuentes v. State*, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999). The jury may choose to believe or disbelieve any portion of the witnesses' testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). When faced with conflicting evidence, we presume the trier of fact resolved any such conflict in favor of the prosecution. *Fuentes*, 991 S.W.2d at 271. Thus, if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we will affirm. *See Sharp*, 707 S.W.2d at 614.

Cardella was charged with the offense of deadly conduct. Under section 22.05(b)(1) of the Penal Code, "[a] person commits an offense if he knowingly discharges a firearm at or in the

direction of one or more individuals." TEX. PENAL CODE ANN. § 22.05(b)(1) (Vernon 2003). With regard to legal sufficiency of the evidence, Cardella contends that, even considering the evidence in the light most favorable to the verdict, no rational trier of fact could have found beyond a reasonable doubt that he knowingly fired a firearm at or in the direction of Hicks. To support his contention, Cardella points to his testimony indicating that he discharged the firearm accidentally into the ground by his own foot. He further points out that, although Hicks testified the gun was raised waist high and was fired at Hicks, this could not be true because there was no physical evidence of bullet holes in Hicks's residence or vehicle.

The testimony given by Cardella and Hicks is obviously conflicting. While Cardella testified he fired the gun into the ground, Hicks testified Cardella fired the gun at him. The jury, as trier of fact, apparently chose to believe Hicks's version of the events over Cardella's. Hicks's and Cardella's respective testimony regarding where the bullet Cardella fired might have ended up was not only conflicting but it was also somewhat speculative. While Hicks stated the bullet probably ended up in the ground behind him, Cardella was of the opinion the bullet probably ended up in Hicks's residence or truck. As it turns out, although it is undisputed Cardella fired the revolver, the evidence shows the bullet was never found. Again, the jury was free to believe Hicks's version over Cardella's. We must presume the jury resolved conflicting evidence in favor of Hicks. Reviewing the evidence in the light most favorable to the verdict, we find the evidence legally sufficient to support Cardella's conviction for deadly conduct.

Cardella makes a similar argument under his factual sufficiency complaint. He again argues that if Hicks's version of the facts is true, then the bullet would have been found in Hicks's residence or truck. Cardella further argues that the only credible evidence came from Cardella and not from Hicks. Viewing the evidence in a neutral light, however, we cannot say

that the evidence supporting the verdict is so weak that the verdict is clearly wrong or manifestly unjust nor can we say that the evidence supporting the verdict is outweighed by the great weight and preponderance of the contrary evidence so as to render it clearly wrong and manifestly unjust. Thus, we hold the evidence factually sufficient to support the verdict. We overrule Cardella's first issue on appeal.

## MOTION TO SUPPRESS

In his third issue on appeal, Cardella argues that the trial court erred in overruling his motion to suppress his arrest, which led to the admission of illegally obtained evidence. The only illegally obtained evidence about which Cardella complains is the revolver Officer Reyes recovered from the head board in Cardella's bedroom. In the trial court and on appeal, Cardella relies on Articles 14.01 and 14.03 of the Texas Code of Criminal Procedure to support his argument. Article 14.01(b) allows a peace officer to make a warrantless arrest when an offense is committed in his presence or within his view. TEX. CODE CRIM. PROC. ANN. art. 14.01(b) (Vernon 2005). It is undisputed the offense in this case was not committed in Reyes presence or within his view. Article 14.03 lists numerous circumstances under which an officer can arrest a person without a warrant. *See* TEX. CODE CRIM. PROC. ANN. art. 14.03 (Vernon Supp. 2009). Cardella argues none of these circumstances apply to this case.

In reviewing a trial court's ruling on a motion to suppress, we must uphold the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *State v. Steelman*, 93 S.W.3d 102, 107 (Tex. Crim. App. 2002). Absent an abuse of discretion, the trial court's findings will not be disturbed on appeal. *Freeman v. State*, 723 S.W.2d 727, 729 (Tex. Crim. App. 1986). Where, as here, a defendant makes a statutory argument that his warrantless arrest was illegal, the proper inquiry is whether there was probable

cause concerning that individual and whether the arrest fell within one of the statutory exceptions to the warrant requirement. *Stull v. State*, 772 S.W.2d 449, 451 (Tex. Crim. App. 1989). The only exception that could conceivably apply to this case under Article 14.03 is the exception that allows an officer to make a warrantless arrest where persons are found in suspicious places and under circumstances that reasonably show such persons have been guilty of some felony or breach of the peace. *See* TEX. CODE CRIM. PROC. ANN. art. 14.03(a)(1) (Vernon Supp. 2009).

At the suppression hearing, the State presented the testimony of Officer Reyes, the deputy who arrived first at the scene of the altercation between Hicks and Cardella. Reyes testified that after speaking to both Hicks and Cardella, and determining that Cardella had used a firearm, he went to Cardella's door and asked if Cardella owned a revolver. When Cardella responded "Yes," Reyes asked, "May I see it?" Cardella said, "It's over here." Reyes followed Cardella to the headboard in the bedroom where the gun was located. Reyes secured the gun in his vehicle and then told Deputy Wilson, who had arrived on the scene, that he was going to arrest Cardella for deadly conduct. Reyes returned to the house and told Cardella he was under arrest.

On cross-examination, Reyes was asked if he considered Cardella's house a suspicious place, that is, a place where criminal activity normally takes place. Reyes said, "Not normally, no, sir." Reyes testified that although he had formed the opinion that he was going to arrest Cardella after he spoke with Hicks, he had not yet done so when he followed Cardella into the house and retrieved the gun. According to Reyes, when he had asked Cardella to show him where the gun was, Cardella had given him permission to go into the house. Reyes also testified that Cardella and Hicks lived close to each other and that Reyes thought the violence might escalate if he left the scene without arresting Cardella.

In its brief, the State gives several reasons why the trial court correctly denied Cardella's motion to suppress. First, the State urges that, even if Cardella's arrest was improper, the trial court did not err in allowing the gun into evidence because Cardella "acknowledged the gun, described it, testified about it, and admitted firing it." We agree that error, if any, is harmless. *See Cameron v. State*, 988 S.W.2d 835, 845 (Tex. App.—San Antonio 1999, pet. ref'd) (holding that an erroneous admission of a defendant's oral statement is rendered harmless when the defendant subsequently testifies to the same facts).

Second, the State points out that the gun was seized before Cardella was arrested. Thus, the gun could not be considered the "fruit of the poisonous tree" as result of an improper arrest. *See State v. Iduarte*, 268 S.W.3d 544, 550-51 (Tex. Crim. App. 2008) (stating "fruit of the poisonous tree" doctrine generally precludes the use of evidence obtained following an illegal arrest). We agree. The evidence shows Reyes followed Cardella into his house, seized the gun, and secured it before he arrested Cardella. Therefore, the gun was not seized pursuant to the arrest of Cardella. *See Rosalez v. State*, 875 S.W.2d 705, 720 (Tex. App.—Dallas 1993, pet. ref'd) (holding because appellant abandoned marijuana before his arrest, the marijuana was not seized pursuant to appellant's illegal arrest).

Third, the State contends the gun was seized only after Cardella consented to Reyes's entry of the residence. We agree. The evidence shows that Reyes not only entered the premises and seized the gun before arresting Cardella, but he also did so with Cardella's consent. *See Myers v. State*, 203 S.W.3d 873, 886 (Tex. App.—Eastland 2006, pet. ref'd) (stating consent to search operates as an exception to the Fourth Amendment's warrant requirement).

Lastly, the State claims the warrantless arrest was justified under Article 14.03(a)(1), which states that an officer may arrest, without warrant, persons found in suspicious places and

under circumstances that reasonably show such persons have been guilty of some felony or violation of breach of the peace. *See* TEX. CODE CRIM. PROC. ANN. art. 14.03(a)(1) (Vernon Supp. 2009). "The determination of whether a place is a 'suspicious place' is highly fact-specific." *Holland v. State*, 788 S.W.2d 112, 114 (Tex. App.—Dallas 1990, pet. ref'd). Few places are suspicious in and of themselves. *Dyar v. State*, 125 S.W.3d 460, 464-65 (Tex. Crim. App. 2003). "Rather, additional facts available to an officer plus reasonable inferences from those facts in relation to a particular place may arouse justifiable suspicion." *Id.*

According to the State, the area around Cardella's house became a suspicious place because Cardella had engaged in a violent act – shooting a gun – in front of the residence, and because there was a potential of escalating violence between Cardella and Hicks. Cardella, in contrast, argues that the area could not have been suspicious because Reyes testified that it was not. However, what Reyes specifically said during his testimony was that the area was not *normally* a place where criminal activity usually takes place. He did not say that he did not consider the area to be a suspicious place at the time he made the arrest. In fact, he indicated that, based on his investigation, he was concerned about further escalating violence if he did not make an arrest. Reyes testified that when he arrived at the scene, Cardella met him and gave his account of the events. Then, Reyes met with Hicks, who told him Cardella had shot a firearm. Upon questioning Cardella, Reyes determined that Cardella not only had a firearm, but that he had fired it. Under these circumstances, the facts available to Reyes and inferences he could reasonably draw from those facts rendered the area around Cardella's residence a "suspicious place" as contemplated by Article 14.03(a)(1).

We find no error in the trial court's overruling of Cardella's motion to suppress his arrest.

## CONCLUSION

As set forth above, we hold the evidence is legally and factually sufficient to support the judgment of conviction for deadly conduct. Further, for the above-stated reasons, we hold the trial court did not err in overruling Cardella's motion to suppress the warrantless arrest. Accordingly, we affirm the trial court's judgment.

Karen Angelini, Justice

Do not publish