Jerry Dorsey JOHNSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 67417.

Court of Criminal Appeals of Texas,
En Banc.

Dec. 23, 1986.

Andrew L. Jefferson, Jr., Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., and Alvin M. Titus and Ed Dodd, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S MOTION FOR REHEARING

McCORMICK, Judge.

■ On original submission, a panel of this Court affirmed appellant's conviction upon the basis of *Haney v. State*, 588 S.W.2d 913 (Tex.Cr.App.1979), and *Ferguson v. State*, 571 S.W.2d 908 (Tex.Cr.App. 1978). Appellant's motion for leave to file motion for rehearing was granted in order for the Court to determine whether appellant's judicial confession waived his right to appeal the unfavorable ruling upon his written pretrial motions to suppress. See Article 44.02, V.A.C.C.P. In the interim, *Haney* and *Ferguson* have been overruled to the extent that they conflict with the recent decision of *Morgan v. State*, 688 S.W.2d 504 (Tex.Cr.App.1985). *Morgan* holds that, upon a plea of guilty or nolo contendere where the punishment assessed by the court does not exceed the punishment recommended by the prosecutor and agreed to by the defendant, the defendant's judicial confession or admission does not bar appeal of matters raised by written pretrial motions. Since appellant's conviction upon his plea of nolo contendere falls squarely within the parameters of Article 44.02 as interpreted by *Morgan*, we will address appellant's grounds of error as presented in his brief on direct appeal.[1]

Appellant filed two motions to suppress. On June 20, 1980, he filed a motion to suppress evidence seized pursuant to a search warrant; on September 2, 1980, appellant filed a supplemental motion to suppress evidence seized as a result of his arrest. Both motions were heard and overruled on September 3, 1980, and, subsequently, appellant entered a plea of nolo contendere. His plea was conditioned upon his right to appellate review of the trial court's rulings on his motions to suppress. Following the agreed punishment recommendation, the trial court assessed punishment at thirty-five years in the Texas Department of Corrections.

We will first address the issue as to the legality of appellant's arrest. Appellant's challenge of the warrantless arrest is twofold: (1) the State failed to prove that the warrantless seizure of appellant was reasonable under the Fourth and Fourteenth Amendments to the United States Constitution and (2) the warrantless arrest was not authorized under Chapter 14, V.A.C.C.P.

In order to better understand appellant's contention we set out briefly the facts of the case. Appellant was arrested for the murder of John Goode. Mary Amy Longacre testified at both the examining trial and the hearing on the motion to suppress. Longacre witnessed the attack on the deceased but stated that she could not identify the perpetrator because of poor lighting conditions. Longacre testified that Goode, a Dallas resident, had been staying with her at her apartment in Houston for several days. At approximately 5:30 a.m. on April 13, 1980, Longacre was awakened by the sound of footsteps inside the apartment. Looking up, she saw a black male at the foot of the bed approaching Goode with what appeared to be a knife in his right hand. Longacre began to scream and attempted to awaken Goode. The intruder started attacking Goode as he was gaining consciousness and Longacre jumped out of bed and ran from the apartment. She ran downstairs to the apartment where her friends, Hap and Susan, lived. Hap, armed with a shotgun, left the apartment to aid Goode, while Susan and Longacre called the police, apartment security, and an ambulance. Hap returned and told Longacre

---

1. We will not address appellant's grounds of error on rehearing which alleges that this Court committed error in failing to address the merits. We have considered appellant's other grounds of error on rehearing and find them to be without merit.

that Goode had been seriously injured. Longacre went to Goode, who was lying on the ground at the foot of a stairwell.

Officers Cuevas and Keyes testified at the hearing on the motions to suppress. The officers arrived at the scene at 6:12 a.m. to find Goode being treated by paramedics. Goode was transported to the hospital where he later died as a result of several stab wounds to the chest.

The bedroom where the stabbing took place was in disarray. The bed linens and spread, as well as the bedroom walls, door and door frame were bloodstained. A bloody kitchen knife was found behind a bedroom vanity. Several articles were found in the hall which lead to the bedroom: a hammer, one black glove, a black undershirt knotted at the top, and a key ring containing assorted keys. The keys appeared to be apartment master keys. Longacre testified that the keys did not belong to her or Goode. There was no evidence of forced entry. There were also bloodstains on the television in the living room, the inside of the apartment door, and in the dining area. Two bloody shoe prints were also found in the dining area.

During the course of the investigation, the appellant, a black male, arrived at the apartment. Keyes stated appellant arrived "a little after six." Appellant identified himself as a maintenance man. Appellant explained that when he called the apartment answering service that morning, they suggested that he go to the apartment because there had been a stabbing. Both officers testified that appellant seemed nervous and that they thought it was odd for appellant to appear since two apartment security guards were also present. Keyes stated appellant appeared to be more agitated in the presence of Longacre.

Due to the physical evidence found at the crime scene, Cuevas believed the perpetrator to be an employee of the apartment complex. One of the keys on the keyring recovered from the hallway opened Longacre's front door. Cuevas sent appellant to the apartment manager to secure the names of other black employees. Upon appellant's return, Cuevas noticed what appeared to be blood on appellant's rear pant's pocket. Cuevas asked appellant if he recognized the keys recovered from the hallway. After admitting that the keys were his, appellant was handcuffed. Keyes read appellant his *Miranda* rights. Thereafter, appellant was transported to the Harris County Homicide Division where he was placed in the custody of Detective J.L. Hall. Hall read appellant his rights and began to interrogate him. During the course of the interrogation, Hall noticed what appeared to be a red substance on appellant's watchband. The watchband and the white pants appellant was wearing were seized.

Since a person is arrested when he has been actually placed under restraint, appellant's arrest occurred at the time he was handcuffed by Keyes. See Article 15.22, V.A.C.C.P.

■ Probable cause to arrest existed if the facts and circumstances within the knowledge of the arresting officer and of which he had reasonably trustworthy information would warrant a reasonable and prudent man in believing that a particular person committed or was about to commit an offense. *Jones v. State*, 565 S.W.2d 934 (Tex.Cr.App.1978); *Hooper v. State*, 516 S.W.2d 941 (Tex.Cr.App.1975); *Barber v. State*, 611 S.W.2d 67 (Tex.Cr.App.1981); *Hawkins v. State*, 660 S.W.2d 65 (Tex.Cr.App.1983); *Harris v. State*, 656 S.W.2d 481 (Tex.Cr.App.1983). This Court will independently scrutinize the objective facts without regard to the subjective conclusions of the police to determine the existence of probable cause. See *Townsley v. State*, 652 S.W.2d 791 (Tex.Cr.App.1983) and cases cited therein.

■ At the time of appellant's arrest, the officers on the scene had personal knowledge or reliable information from a credible source of the following facts and circumstances:

(1) the attacker was a black male.

(2) there was no sign of forced entry.

(3) one of the master keys found in the hallway unlocked the front door.

(4) the assailant would be blood spattered.

(5) appellant arrived at the murder scene shortly after the police and furnished an odd explanation for his presence.

(6) appellant was a black male.

(7) appellant was employed by and a resident of the apartment complex.

(8) appellant appeared to have blood on his white pants.

(9) appellant admitted that the master keys found in the hallway were his.

Based on the foregoing, we find that men of reasonable caution would have been warranted in the belief that appellant had committed the murder of Goode. We believe that the facts in the instant case supporting probable cause are as strong as, if not stronger than, those found in *Townsley*, supra. Furthermore, as in *Ussery v. State*, 651 S.W.2d 767, 770 (Tex.Cr.App. 1983), appellant "literally thrust himself under the scrutiny of the investigating officers at the scene of the crime." Despite this initial similarity to Ussery, the presence of appellant's keys within the apartment and his subsequent admission of ownership supply a direct link between the appellant and the offense. Therefore, the result in Ussery, i.e. the officers only possessed sufficient knowledge to justify a brief detention for investigation, is clearly inapplicable to the case at bar.

■ Appellant further contends that a showing of probable cause to make a warrantless arrest is not sufficient in the absence of exigent circumstances. The State's brief does not address the issue of exigent circumstances.

The Fourth Amendment as interpreted by the United States Supreme Court does not require that police officers first obtain a warrant in order for a public, felony arrest to be valid when probable cause to arrest exists. *United States v. Watson*, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976). In *Watson*, the United States Supreme Court stated:

"... we decline to transform [the] judicial preference [for a warrant] into a constitutional rule when the judgment of the Nation and Congress has for so long been to authorize warrantless public arrests on probable cause rather than to encumber criminal prosecutions with endless litigation with respect to the existence of exigent circumstances, whether it was practicable to get a warrant, whether the suspect was about to flee, and the like." Id. at 423–424, 96 S.Ct. at 828.[2]

Since appellant's arrest at the felony crime scene within two hours of the offense was based upon probable cause, we find the existence of exigent circumstances constitutionally immaterial.

■ Appellant also challenges the validity of the arrest under Chapter 14, V.A.C. C.P., (1979). At the suppression hearing, the officers testified that appellant was arrested without a warrant inside apartment # 204 at approximately 7:15 or 7:30 a.m. on April 13, 1980. They acknowledged that appellant had not committed a felony or an offense against the public peace in their presence nor did appellant flee or appear to be about to escape. After identifying the keys, appellant was handcuffed, read the Miranda rights, placed in the squad car, and transported to the Homicide Division where he was turned over to Detective Hall. The officers admitted that they made no effort to secure an arrest warrant.

Under the facts, Articles 14.01 and 14.02 are inapplicable; the offense was not committed within the view of a magistrate or peace officer. Likewise, Article 14.04 is inapposite because the officers' own testimony indicates that they were not acting upon satisfactory proof from representa-

---

**2.** The United States Supreme Court employed a dual rationale in *Watson v. United States*. First, the common law rule authorizing warrantless arrests by a peace officer for misdemeanors or felonies committed in his presence, as well as, for felonies not committed in his presence if there are reasonable grounds for making the arrest is the prevailing rule in a majority of states. Second, in *Watson*, the defendant's arrest was authorized under federal statute.

tions by a credible person that the felony offender was about to escape so that there was no time to procure a warrant. See *Fry v. State*, 639 S.W.2d 463, 476 (Tex.Cr. App.1982).

The version of Article 14.03 [3], in effect at the time of appellant's arrest, provided in pertinent part:

"Any peace officer may arrest, without warrant, persons found in suspicious places and under circumstances which reasonably show that such persons have been guilty of some felony...."

Circumstances within the knowledge of a peace officer which reasonably show that a particular person is guilty of a felony is the functional equivalent of probable cause to believe that a particular person has committed a felony. Appellant was arrested under circumstances which reasonably showed that he was guilty of the felony offense of murder. The question then becomes what is a suspicious place for the purposes of Article 14.03.

Initially, we note that few, if any, places are suspicious in and of themselves. Rather, additional facts available to an officer plus reasonable inferences from those facts in relation to a particular place may arouse justifiable suspicion. We also recognize that 14.03 should be applied to authorize warrantless arrests in only limited situations. Thus, the obvious legislative intent of Chapter 14, protection of individual rights and furtherance of legitimate law enforcement, will be attained.

In the past, Article 14.03(a) and its predecessor Article 14.03 have served as authorization for limited investigatory field detentions which occurred in a variety of places and as subsequent validation for warrantless arrests based upon probable cause. See *Meeks v. State*, 653 S.W.2d 6 (Tex.Cr. App.1983), where the defendant was seen walking swiftly from lot where truck was parked with what officer believed to be a small gun in his hand; *Lara v. State*, 469 S.W.2d 177 (Tex.Cr.App.1971), at 4:30 p.m., defendant fled from abandoned houses upon approach of police officers; *Hamel v. State*, 582 S.W.2d 424 (Tex.Cr.App.1979), while under surveillance for trafficking in narcotics, defendant was observed at Woolco Store acting in manner which led officers to believe he was engaged in shoplifting; *Adams v. State*, 552 S.W.2d 812 (Tex. Cr.App.1977), while at a motel on unrelated dispatch, officers saw defendant driving a car with a television in the trunk park next to room occupied by known fence. See also *Castillo v. State*, 494 S.W.2d 844 (Tex.Cr. App.1973); *Baity v. State*, 455 S.W.2d 305 (Tex.Cr.App.1970); *Alaniz v. State*, 458 S.W.2d 813 (Tex.Cr.App.1970); *Stuart v. State*, 447 S.W.2d 923 (Tex.Cr.App.1969), where warrantless arrests were authorized under Article 14.03. In the recent decision of *Douglas v. State*, 679 S.W.2d 790 (Tex. App.-Fort Worth 1984-no pet.), the Court of Appeals held that a homicide crime scene was a suspicious place under the facts and circumstances available to the arresting officers and the warrantless arrest of the defendant was valid under Article 14.03(a).

We see no distinction between the detention cases and the situation at bar (where the officers' suspicions were justifiably aroused and probable cause to arrest arose contemporaneously) which would prevent the application of Article 14.03. Moreover, the presence of appellant was not contrived by law enforcement officials to circumvent the procurement of a warrant, nor did appellant's arrest occur in a place where he could claim a reasonable expectation of privacy. Therefore, we believe that there is no statutory inhibition attached to appellant's arrest. We hold appellant's arrest was authorized under Article 14.03, V.A.C. C.P. (1979). Accordingly, appellant's ground of error number one is overruled.

Appellant also contends that the evidence seized from his apartment pursuant to a search warrant should have been suppressed because the warrant and therefore the items seized were the fruits of an illegal arrest. Having upheld the arrest,

**3.** In 1981, Article 14.03 was amended. Article 14.03 was not altered substantively. However, an additional subdivision was enacted and former Article 14.03 became 14.03(a).

appellant's ground of error number three is overruled.

■ In ground of error number two appellant contends that his apartment was searched and items were seized pursuant to an invalid search warrant. Bloodstained clothing and rags were seized from various locations in appellant's apartment, as well as a pair of waffle bottom boots which were drying in the oven. Appellant argues that Article 18.02, Section 10, V.A.C.C.P., as limited by Article 18.01(c) invalidates the warrant. We agree.

Article 18.02, Section 10,·provides:

"A search warrant may be issued to search for and seize:

" . . .

"(10) property or items, except the personal writings by the accused, constituting evidence tending to show that a particular person committed an offense...."

Article 18.01(c), in pertinent part, provides:

"(c) A search warrant may not be issued pursuant to Subdivision (10) of Art. 18.02 of this code unless the sworn affidavit required by Subsection (b) of this article sets forth sufficient facts to establish probable cause: ... (3) that the property or items to be searched for or seized are located at or on the particular person, place, or thing to be searched."

The affidavit in the instant case establishes that a specific offense was committed by appellant and that the items sought were evidence that appellant committed the offense. However, the affidavit does not set forth substantial facts which establish probable cause to believe that the items sought would be located at appellant's apartment. Absent these underlying facts, the judge was unable to make an independent determination of probable cause and the evidence seized as a result of the search should have been suppressed. See and compare *Drousche v. State*, 651 S.W.2d 883 (Tex.App.-Austin 1983, p.d.r. refused).

■ We must now decide whether the trial court's refusal to suppress the items seized from appellant's apartment requires reversal even though appellant subsequently stipulated to evidence which contained fruits of the error. Under Texas law, a plea of guilty or nolo contendere alone is not sufficient to support a conviction. Rather, Article 1.15, V.A.C.C.P.,[4] places a burden upon the State to introduce sufficient evidence to support the judgment. *Thornton v. State*, 601 S.W.2d 340 (Tex.Cr. App.1980).

The supporting evidence can consist of a judicial confession alone, *Dinnery v. State*, 592 S.W.2d 343 (Tex.Cr.App.1980),[5] and cases cited therein; oral or written stipulations of evidence not containing a confes-

4. Article 1.15, supra, reads:

"No person can be convicted of a felony except upon the verdict of a jury duly rendered and recorded, unless in felony cases less than capital, the defendant, upon entering a plea, has in open court in person waived his right of trial by jury in writing in accordance with Articles 1.13 and 1.14; provided, however, that it shall be necessary for the state to introduce evidence into the record showing the guilt of a defendant and said evidence shall be accepted by the court as the basis for its judgment and in no event shall a person charged be convicted upon his plea without sufficient evidence to support the same. The evidence may be stipulated if the defendant in such case consents in writing, in open court, to waive the appearance, confrontation, and cross-examination of witnesses, and further consents either to an oral stipulation of the evidence and testimony or to the introduction of testimony by affidavits, written statements of witnesses, and any other documentary evidence in support of the judgment of the court. Such waiver and consent must be approved by the court in writing, and be filed in the file of the papers of the cause."

5. Although there seems to be varying opinions among the members of the Court as to what constitutes "a judicial confession," for reasons which will become apparent *ante* we need not decide this issue. See *Dinnery v. State*, supra, at page 352, wherein Presiding Judge Onion, speaking for the majority, wrote: "It has been said that judicial confessions are confessions made to an examining court before the trial or a confession made in open court during the course of the trial." But, see *Dinnery v. State*, supra, at note 11 (Clinton, J., dissenting).

sion of guilt by the accused, *Galitz v. State*, 617 S.W.2d 949 (Tex.Cr.App.1981); or a combination of both of the preceding.

 Appellant signed a form entitled waiver of constitutional rights, agreement to stipulate and judicial confession which was introduced into evidence as State's Exhibit No. 1. The form contained an allegation which tracked the indictment and an acknowledgment by the appellant that he understood the allegations and did not contest that they were true and that the alleged acts were committed on April 13, 1980. The legal effect of appellant's plea of nolo contendere is the same as a plea of guilty under Article 27.02(5), V.A.C.C.P. Even though the Court has recognized a slight difference between the two pleas based on "the defensive posture of the accused," *Brewster v. State*, 606 S.W.2d 325, at 329 (Tex.Cr.App.1980), the distinction is of little moment in the case at hand for we will disregard the plea and assume for the purposes of this opinion that appellant's written acknowledgment constitutes a "judicial confession." Therefore, neither plea or judicial confession will be considered in determining whether there is sufficient evidence to form a basis for the judgment.[6] The plea is not considered because it is not sufficient to support the conviction. See supra at page 422. The rationale for the omission of the judicial confession can be found in *Morgan v. State*, supra at note 2, wherein the Court stated:

"[t]hus in both the *Ferguson* and *Haney* contexts, it is appropriate to view the defendant's judicial admission itself, literally, as a fruit of the contested search or seizure."

Likewise, we will disregard appellant's oral "judicial admission" at the hearing on the plea. The following colloquy occurred on direct examination of the appellant:

"Q. (Prosecutor) Secondly, what has been marked as State's Exhibit No. 1 is called a stipulation of evidence. That means that you are *admitting* in here that what is alleged in the *allegation* is *uncontested and true. The truth is uncontested.* Is that correct?

"A. (Appellant) *Yes, sir.*" (Emphasis added).

Since appellant's response could be construed under *Dinnery* as a judicial admission, it will not be considered. Further, we will excise the tainted evidence contained in State's Exhibit No. 2, the offense report, and in State's Exhibit No. 3, the examining trial testimony. Compare the procedure utilized in *Brewster v. State*, where the panel did not consider the "tainted" stipulation of a chemist.

 If the untainted, stipulated evidence which remains is a sufficient "basis for [the trial court's] judgment" then reversal due to "trial error" is not required. Essentially, this approach follows the dictate of *Morgan*—non-use of the judicial confession—while applying the *Stiggers* principle in *Ferguson v. State*, 571 S.W.2d 908 (Tex.Cr.App.1978), which remains viable after our decision in *Morgan*. *Morgan* only overruled *Ferguson* in part, viz:

"Just as the plea itself no longer waives the right to complain of pretrial rulings on appeal, so the confession or admission will not bar an appellate court from reaching the merits of the complaint. *To this extent*, then *Ferguson* and its progeny including *Haney* are overruled." *Morgan v. State*, supra, at page 507.

Stated in a different manner, if the guilty plea or plea of nolo contendere is supported by evidence as required by Article 1.15, supra, which is independent of the judicial confession and the tainted evidence, then

---

6. Recently, in *Rodriguez v. State*, 689 S.W.2d 227 (Tex.Cr.App.1985), we held that if the ground of error is insufficiency of the evidence to support the plea then the judicial confession will *not* be disregarded. The instant case concerns disposition of the cause after a pretrial ruling on evidence has been found to be erroneous. Thus, the rule announced in *Rodriguez v. State*, supra, does not apply.

any erroneous ruling on an appealable pretrial motion does not vitiate the conviction.

In the case at bar, the remaining untainted evidence consists of the examining trial testimony of the eyewitness, Longacre; the examining trial testimony of Hall concerning his interrogation of the appellant and the seizure of appellant's white pants and wrist watch; the portions of the offense report submitted by Keyes and Cuevas regarding the arrest of appellant and the crime scene investigation, including the appellant's admission regarding the ownership of the keys found within the apartment; the portions of the offense report submitted by Hall detailing his interrogation of appellant and the seizure of the white pants and wrist watch; and the portions of the offense report containing the results of laboratory blood typing tests performed upon the white pants, wrist watch, knife, two squares of carpet, set of keys, black glove, hammer, and black T-shirt. We find that the untainted stipulated evidence, absent the judicial confession and plea, embraced every essential element of the offense charged and manifests the guilt of appellant. See and compare *Galitz v. State*, supra, where stipulated evidence, consisting *solely* of examining trial testimony, was a sufficient basis for judgment under Article 1.15, supra.

Accordingly, appellant's motion for rehearing is overruled and the judgment of the trial court affirmed.

CLINTON, J., concurs in the result.

TEAGUE, J., dissents.

MILLER, J., dissents only to the majority holding that the "remaining untainted evidence" is sufficient to support the judgment of conviction.