Phil Denver TOWNSEND, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–90–00776–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

April 15, 1993.

Peter Lewis, Houston, for appellant.

John B. Holmes, Jr., Kimberly Aperauch Stelter, Houston, for appellee.

Before MIRABAL, DUGGAN and WILSON, JJ.

## OPINION

MIRABAL, Justice.

After the trial court overruled his motion to suppress, appellant, Phil Denver Townsend, plead no contest to a charge of aggravated robbery, and true to two enhancement paragraphs. The trial court found appellant guilty and assessed punishment at 40–years confinement, in accordance with a plea bargain. Appellant now appeals the ruling on his motion to suppress. We affirm.

On April 12, 1990, Stephanie Howlett and Carie Olivo, the employees of a retail clothing store called Clothestime, were robbed at gunpoint. On May 9, 1990, appellant was taken to the Cypresswood police substation, where his picture was taken. Appellant's photograph, as part of a photospread, was shown the same day, but at different times, to Howlett and Olivo. They each identified appellant's photo as that of the robber. Appellant was charged with aggravated robbery. On June 25 and 26, 1990, lineups were conducted at the sheriff's office. Appellant was again positively identified by Howlett and Olivo, who viewed separate lineups.

In his first and second points of error, appellant asserts the trial court erred in denying his motion to suppress the out-of-court identifications because they were the product of his illegal arrest. Appellant does not complain about the trial court's denial of his motion to suppress in-court identifications by the same witnesses, Howlett and Olivo.

The trial court is the sole judge of the credibility of the witnesses in a pretrial suppression hearing and, absent a showing of an abuse of discretion, the trial court's findings will not be disturbed. *Freeman v. State*, 723 S.W.2d 727, 729 (Tex.Crim.App. 1986); *Walker v. State*, 588 S.W.2d 920, 924 (Tex.Crim.App. [Panel Op.] 1980).

On August 28, 1990, Howlett and Olivo testified at the suppression hearing that during the robbery on April 12, 1990, they saw the robber's face, plainly and clearly, without obstruction, and in regular light. Both witnesses also made positive in-court

identifications of appellant at the suppression hearing. Carie Olivo testified as follows:

Q. [By Prosecutor]: Without going into detail about what may have happened, did something unusual happen to you on April 12th, 1990?

A. We were robbed.

Q. Did you have a chance to see the person that did the robbing?

A. Yes, Ma'am.

Q. Did you get a good look at his face?

A. Yes, ma'am.

Q. Was there anything covering his face or distorting it in any way?

A. No.

Q. What were the lighting conditions in the store at the time that you were robbed?

A. Fine. Just like here, just regular lighting.

Q. Were they bright like this or brighter or darker?

A. Just like this.

Q. Was there anything obstructing your vision between you and the person that did the robbing?

A. No.

Q. How close were you to that person?

A. He was standing right in front of me.

        .        .        .        .        .

Q. The person that you picked out in the lineup, did you pick him out because you had seen a photograph of him or the detective showed you the photo spread or did you pick a person out because that's the person that you remember that committed the offense?

A. Because I remember him from the robbery.

Q. And is that the same reason why you're identifying him in the courtroom today or is it because you remember him from the lineup and the photo spread?

A. I remember him from the robbery.

Stephanie Howlett testified as follows:

Q. [By Prosecutor]: Back in April did you work at a Clothestime store?

A. Yes, I did.

Q. Where was that located?

A. On I–45, right across from Greenspoint Mall.

Q. Is that location in Harris County, Texas?

A. Yes, it is.

Q. Without going into what happened to you, on April the 12th, 1990, when you were working, did something unusual happen to you?

A. Yes. I was robbed that night.

Q. Did you have an opportunity to see the person who robbed you?

A. Yes, I did,

Q. Did you get a good look at his face?

A. Yes, I did.

Q. Was there anything covering his face or obstructing your view in any way?

A. Not his face. He had a ball cap on, but I could see his face clearly.

Q. What was the lighting conditions like in the Clothestime?

A. Our lights were very bright. It wasn't quite dark outside yet, but the lights in the store were very bright.

Q. So you were able to see objects in front of you with no problem at all?

A. Right, no problem.

Q. How close did you get to the individual who robbed you?

A. I came within a foot of him.

Q. Did you speak with him?

A. Yes, I did.

        .        .        .        .        .

Q. The person you picked out of the lineup, is it the same person seated here in the courtroom today?

A. Yes, it is.

Q. Did you pick that person out in that lineup because you had seen him earlier in a photo spread or because you remembered him from the date of the offense?

A. Because I remembered him as being the person that robbed me that night.

Q. And your identification of him here today, is that based on the fact that you have seen him in a lineup now and you have seen him in a photo spread or was it because you remember him from the date he committed the crime?

A. Because I remember him from committing the crime?

Q. Are you sure this is the man that did the robbery?

A. Yes, I am.

. . . . .

Q. [By Defense Counsel]: Do you recall whether he had on long sleeves or short sleeves the night you were robbed?

A. The night I was robbed, he had a short-sleeve T-shirt on.

Q. And do you know whether or not he had any tattoos, or do you recall?

A. Yes, he had tattoos covering most of his arms, from what I could see.

. . . . .

[By Prosecutor]: I am going to ask the Defendant to roll up his sleeves and show the witness his tattoos and see if she can identify them.

[The Court]: Okay. If you will stand up and roll up your sleeves for the purposes of this hearing.

A. Yes, that looks like the tattoos that were all over the person who robbed me.

Q. [By Prosecutor]: One more question. The photo spread that you saw and the lineups did not show the Defendant's arms; is that correct?

A. Correct. No, I didn't see any part of his body. All I saw was his face in the lineup. He had his arms completely covered up.

Q. So your prior identification, including that took place in the courtroom today earlier, were based on his facial features and not his tattoos, is that correct?

A. Correct.

■ For the sake of argument, we assume, without deciding, that appellant's arrest was illegal, and that the out-of-court photographic and lineup identifications should have been suppressed as tainted fruit of the illegal arrest. Even so, we are faced with a record that shows the two eyewitnesses to the aggravated robbery had an independent recollection of their encounter with appellant, based on their clear, unobstructed view of appellant during the robbery. The evidence clearly supports the conclusion that the eyewitnesses' current, in-court identification was uninfluenced by the out-of-court identifications. The trial court did not err in ruling the *in-court* identifications would be admissible. *Pichon v. State,* 683 S.W.2d 422, 425–26 (Tex.Crim.App.1984); *Taylor v. State,* 693 S.W.2d 4, 5–6 (Tex.App.—Beaumont 1985, pet. ref'd). As noted earlier, appellant moved to suppress *both* the *in-court* identifications and the *out-of-court* identifications. The trial court overruled *both* motions, and appellant then entered his plea. On appeal, appellant complains only about the ruling on the admissibility of the out-of-court identifications, presumably because the law is clear that the in-court identifications were properly allowable under *Pichon* and *Taylor.* Due to the nature of the available in-court identification testimony, we conclude, beyond a reasonable doubt, based on the specific record before us, that any error by the trial court in overruling appellant's motion to suppress the *out-of-court* identifications did not constitute reversible error under Tex.R.App.P. 81(b)(2).

Accordingly, we overrule appellant's points of error one and two.

Appellant asks us to consider his third point of error only in the event we do not reach the merits of his first two points of error. Having reviewed his first two points of error, it is not necessary to reach his third point of error, and we decline to do so.

We affirm the judgment.

WILSON, J., dissenting.

WILSON, Justice, dissenting.

Because I believe the majority's holding renders appellant's right to appeal under TEX.CODE CRIM.P.ANN. art. 44.02 (Vernon 1979) meaningless, and is contrary to *McKenna v. State*, 780 S.W.2d 797 (Tex. Crim.App.1989), I respectfully dissent. Appellant is entitled to plead *after* knowing whether the evidence challenged in his motion to suppress could be legally introduced against him in a trial on the merits.

Appellant filed a written motion to suppress out-of-court identifications of him because they were the fruit of his alleged illegal arrest. After the trial court overruled his motion to suppress, appellant pled no contest to the charge of aggravated robbery. Appellant now challenges the trial court's ruling on his motion to suppress. The majority concludes that any error committed by the trial court in denying the motion to suppress the out-of-court identifications was harmless given that in-court identifications were made at the suppression hearing. Therefore, the majority declines to review the correctness of the trial court's ruling on the motion to suppress.

I believe the majority's refusal to consider the merits of appellant's contention is inappropriate under current legal standards. Article 44.02 of the Texas Code of Criminal Procedure provides a defendant in a criminal action the right to appeal under the procedures set forth in TEX.R.APP.P. 40(b)(1). *Lemmons v. State*, 818 S.W.2d 58, 62 (Tex.Crim.App.1991). The Court of Criminal Appeals has interpreted article 44.02 as indicating "a clear expression of legislative intent that such a defendant has the right of appeal from a conviction based on his plea of guilty or *nolo contendere.*" *Morgan v. State*, 688 S.W.2d 504, 507 (Tex. Crim.App.1985). Permitting appeal under these circumstances encourages defendants to plea bargain where the only contested issue between the parties is raised in the motion. *Id.* at 507. "Having thus encouraged pleas of guilty and *nolo contendere* in exchange for the right to appeal contested pretrial issues, the Legislature surely contemplated a *meaningful* appeal—*one that addresses and decides each issue on its merits. Id.* (emphasis added).

I agree with Judge Teague's interpretation of the holding in *Morgan:*

In this instance, the majority opinion holds, for purposes of Art. 44.02, V.A.C.C.P., that if the defendant files a written pretrial motion to suppress, after which a hearing is held thereon but the trial judge denies or overrules the motion, and thereafter the defendant enters into a plea bargain agreement, which entitles him to appeal the trial court's ruling on the motion to suppress, and the plea bargain agreement is consummated, if there is an appeal, an appellate court will review the merits of the defendant's contention, that the trial court erred in denying or overruling the pretrial motion to suppress, without resorting to any sort of legal "technicality" in order to avoid addressing the issue whether the trial court erred in denying or overruling the motion to suppress.

*Morgan*, 688 S.W.2d at 508 (Teague, J., concurring).

The majority states that, even assuming appellant's arrest was illegal and the out-of-court identifications should have been suppressed, the evidence independent of the out-of-court identifications was sufficient to support appellant's conviction. The majority appears to be following the analysis set out in *Johnson v. State*, 722 S.W.2d 417 (Tex.Crim.App.1986). In *Johnson*, the Court of Criminal Appeals held:

[If] the guilty plea or plea of nolo contendere is supported by evidence as required by Article 1.15, [V.A.C.C.P.], which is independent of the judicial confession and the tainted evidence, then any erroneous ruling on an appealable pre-trial motion does not vitiate the conviction.

722 S.W.2d at 423–24.

I would follow the analysis set forth in *McKenna v. State*, 780 S.W.2d 797 (Tex. Crim.App.1989). In that case, a defendant filed a written pretrial motion to suppress his written confession to the offense of sexual assault. After the trial court overruled his motion to suppress, the defendant pled guilty. The defendant appealed the

trial court's overruling of his motion to suppress. The Court of Criminal Appeals found as follows:

> The court of appeals, by relying on the *Johnson* decision, held that since appellant's guilty plea was supported by evidence independent of his judicial confession and challenged extrajudicial confession, any erroneous ruling on his motion to suppress is immaterial to the validity of the guilty plea. Under this Court's analysis in *Kraft*, as discussed *supra*, this conclusion is no longer correct. Appellant apparently only stipulated to this other evidence after his motion to suppress was denied, and the State then had this evidence to use against him at trial or to conduce him to plead guilty to a lesser offense, which is exactly what happened here. The ruling on the motion to suppress is in the same juxtaposition to appellant's decision to plead guilty in *Kraft*, so it cannot be rationally stated that this ruling is immaterial to the validity of the guilty plea. Thus, under our rationale in *Kraft*, the court of appeals erred in not reviewing the merits of appellant's motion to suppress.

780 S.W.2d at 800. The court expressly stated that *Johnson* was overruled to the extent it conflicts with the holding in *McKenna. Id.*

In the *McKenna* opinion, the Court of Criminal Appeals quoted extensively from *Kraft v. State*, 762 S.W.2d 612, 614 (Tex.Crim.App.1988), for the reasons supporting the court's interpretation of the rule:

> Just because other, unspecified evidence, not subject to a motion to suppress, might have been legally sufficient to support a verdict of guilt had the cause gone to trial, does not mean that the evidence appellant *did* seek to suppress could not have been, in his decision whether to put the State to its proof, the straw that broke the proverbial camel's back. It is for appellant, on advice of counsel, to determine on what quantum of evidence to relinquish his rights and plead, and what quantum to take his chances at trial. For this Court now to speculate, in effect, that he would have pled *nolo contendere* regardless of whether he would

thereby preserve his right to appeal the trial court's ruling on his motion to suppress, or worse, that he would have been convicted in any event in a trial, would encroach upon appellant's prerogative to assess the relative strength of his own case. Such encroachment could only frustrate the legislative purpose behind Art. 44.02, supra, which we endeavored to protect in *Isam*, namely: to encourage guilty pleas in cases such as this.

> We hold that so long as it may be concluded that particular evidence the accused maintains should have been suppressed pursuant to a motion raising the Fourth or Fifth Amendment violations would in any measure inculpate the accused, that evidence has been used against him in securing his misdemeanor conviction, and hence, the appellate court should entertain the merits of his appeal. . . .

*McKenna* at 799 (emphasis original).

In the present case, appellant plead no contest only after the trial court overruled his motion to suppress the out-of-court identifications, and did so with the understanding he could appeal the trial court's ruling on the motion to suppress. I do not believe it is reasonable to assume that the trial court's ruling did not "[contribute] in some measure to the State's leverage in the plea bargaining process." *McKenna*, 780 S.W.2d at 800. I believe, therefore, appellant has been denied a meaningful appeal which addresses the issues on the merits consistent with the holding in *McKenna.*

Further, on consideration of the merits of point of error one, I would hold that appellant's out-of-court identifications were the fruits of his illegal arrest. I would reverse the judgment and remand to the trial court to permit appellant to re-plead. Therefore, I respectfully dissent.