TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-00-00767-CR






Bradley Robert Dyar, Appellant



v.



The State of Texas, Appellee






FROM THE COUNTY COURT AT LAW OF BASTROP COUNTY


NO. 31,791, HONORABLE M. BENTON ESKEW, JUDGE PRESIDING






 Bradley Robert Dyar was charged with driving while intoxicated and entered a plea
of nolo contendere. The trial court sentenced him to 180 days' confinement in county jail and
imposed a $750 fine. Dyar appeals on the ground that the trial court erroneously denied his motion
to suppress a blood sample taken pursuant to an arrest he alleges was illegal. We hold that the arrest
was lawful under article 14.03(a)(1) of the Texas Code of Criminal Procedure and will affirm the
trial court's orders. See Tex. Code Crim. Proc. Ann. art. 14.03(a)(1) (West Supp. 2001).


BACKGROUND

 Just after midnight on New Year's Eve 1999, Dyar had a one-car accident in
Smithville, while driving from Austin to Houston. Texas Department of Public Safety Trooper Tony
Thompson responded to the accident, arriving after Dyar had been transported to the hospital. 
Thompson observed that the vehicle had left the roadway and landed upside down.

 Thompson went to the hospital to speak with Dyar, who was in the emergency room
with a visible head injury. Thompson found Dyar's speech to be intelligible but slurred. Dyar stated
that he had been "partying" with friends in Austin. He said he had intended to rent a room in Austin,
but at the last minute, decided to drive home to Houston. Thompson smelled alcohol on Dyar and
Dyar admitted to drinking alcohol that night. Thompson was aware that Dyar was under twenty-one
years of age and so his combined consumption of alcohol and driving was, at minimum, a Class C
misdemeanor. Thompson then read Dyar both the Miranda warnings and the DWI statutory
warning, placing him under arrest. After receiving the warnings, Dyar consented to a blood test. A
blood sample was taken and sent to the crime laboratory.

 Dyar was charged by information with driving while intoxicated on the morning of
January 1, 2000. Dyar moved to suppress the blood specimen, asserting that it was obtained
pursuant to an illegal arrest. After a pre-trial hearing, the trial court denied the motion, and
subsequently Dyar entered a plea of nolo contendere. The court sentenced him to 180 days'
confinement at the Bastrop County jail, but suspended the imprisonment and placed Dyar on
community supervision for two years. The court ordered him to pay a fine of $750, restitution of
$64.92, and perform 100 hours of community service.

 On appeal, Dyar asserts that the trial court erred by refusing to grant his motion to
suppress evidence. Dyar argues that the arrest was illegal because it was warrantless and none of
the statutory exceptions to the warrant requirement apply; therefore, the blood specimen should be
suppressed.

DISCUSSION A trial court's ruling on a motion to suppress is generally reviewed for abuse of
discretion. Oles v. State, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999). However, when the trial
court's ruling is not grounded in factual evaluations, we review the trial court's decision de novo. 
Id. The trial court's decision on the legality of Dyar's arrest was based on undisputed facts; thus we
review the orders de novo. See id.

 This case involves a warrantless arrest. As a general rule, a police officer must obtain
an arrest warrant before taking an individual into custody. Dejarnette v. State, 732 S.W.2d 346, 349
(Tex. Crim. App. 1987). Warrantless arrests are illegal unless authorized by one of the statutory
exceptions to the rule. Id. Chapter 14 of the Code of Criminal Procedure authorizes arrest without
a warrant in limited circumstances. See Tex. Code Crim. Proc. Ann. arts. 14.01, .02, .04 (West
1977) & art. 14.03 (West Supp. 2001).

 In his sole issue presented, Dyar argues that the trial court erroneously denied his
motion to suppress the blood specimen. He asserts that none of the exceptions in chapter 14 will
justify his arrest. Therefore, Dyar contends that the warrantless arrest was illegal and the resulting
blood specimen should be suppressed. 

 The State, however, relies on article 14.03(a)(1) to authorize the arrest. See id. art.
14.03(a)(1). That article provides: 


Any peace officer may arrest, without a warrant: persons found in suspicious places
and under circumstances which reasonably show that such persons have been guilty
of some felony, violation of Title 9, Chapter 42, Penal Code, breach of the peace, or
offense under Section 49.02, Penal Code, or threaten, or are about to commit some
offense against the laws; . . . . 



Id. (emphasis added).

 Dyar objects to the application of this provision to authorize his warrantless arrest. 
He notes that this article only permits the warrantless arrest of "persons found in suspicious places." 
Dyar argues that a hospital is not a "suspicious place." Because he was first encountered by the
trooper at a hospital, where he was placed under arrest, Dyar argues that this statutory exception does
not apply.

 Texas courts have not interpreted article 14.03(a)(1) so rigidly. Very few places are
suspicious per se. Johnson v. State, 722 S.W.2d 417, 421 (Tex. Crim. App. 1986.) A place may
become "suspicious," however, based on the surrounding circumstances. Id. The facts available to
the arresting officer at the time, and reasonable inferences drawn from those facts, may render a
place suspicious so as to invoke article 14.03(a)(1). Muniz v. State, 851 S.W.2d 238, 251 (Tex.
Crim. App. 1993); Johnson, 722 S.W.2d at 421. 

 In fact, article 14.03(a)(1) requires the legal equivalent of probable cause. Amores
v. State, 816 S.W.2d 407, 413 (Tex. Crim. App. 1991); see Johnson, 722 S.W.2d at 421. In Texas,
probable cause for a warrantless search and seizure is determined by the totality of the circumstances.
Torres v. State, 868 S.W.2d 798, 801 (Tex. Crim. App. 1993); Amores, 816 S.W.2d at 413; Johnson,
722 S.W.2d at 421. Accordingly, Texas courts have held that an otherwise innocent locale can be
a "suspicious place" for the purposes of article 14.03(a)(1) based on the totality of the circumstances. 
See Muniz, 851 S.W.2d at 251 (concluding closet was suspicious place when circumstances showed
its inhabitant had committed felony and was hiding therein); Crowley v. State, 842 S.W.2d 701, 703
(Tex. App.--Houston [1st Dist.] 1992, pet. ref'd) (concluding garage could be classified as
suspicious place when circumstances indicated someone involved in hit and run accident was hiding
inside); State v. Parson, 988 S.W.2d 264, 268 (Tex. App.--San Antonio 1998, no pet.) (concluding
"suspicious place" requirement was satisfied when defendant was found in front yard of residence
after being involved in hit and run accident). Thus, the cases have examined the circumstances
surrounding the offense to determine whether the situs of the arrest qualified as a "suspicious place."

 "The determination of whether a place is a 'suspicious place' is highly fact-specific." 
Holland v. State, 788 S.W.2d 112, 114 (Tex. App.--Dallas 1990, pet. ref'd) (citation omitted). The
application of 14.03(a)(1) to the instant case requires an inquiry into the facts available to Thompson
and any reasonable inferences that can be drawn from those facts. See Muniz, 851 S.W.2d at 251; 
Johnson, 722 S.W.2d at 421. At the time of the arrest, Thompson knew that there were no other cars
involved in the accident and that it occurred just after midnight on New Year's Eve. He knew that
Dyar's vehicle left the roadway and landed upside down. At the hospital, Thompson smelled alcohol
on Dyar and noticed that Dyar's speech was slurred. Dyar, a minor, told Thompson that he had been
"partying" with friends in Austin and had been drinking alcohol. (1) Therefore, Thompson knew Dyar
had at least committed a Class C misdemeanor. See Tex. Alco. Bev. Code Ann. § 106.041(a), (b)
(West Supp. 2001).

 Thompson reasonably inferred from those facts that alcohol was likely a factor in the
accident. Driving while intoxicated is a breach of the peace, and Dyar does not contend otherwise. 
See Romo v. State, 577 S.W.2d 251, 253 (Tex. Crim. App. 1979); Cooper v. State, 961 S.W.2d 229,
232 (Tex. App.--Houston [1st Dist.]1997, pet. ref'd). The totality of the circumstances created a
reasonable suspicion that Dyar was guilty of that offense. See Amores, 816 S.W.2d at 413; Johnson,
722 S.W.2d at 421. Dyar focuses on the hospital where the arrest occurred. He argues that a hospital
is not a "suspicious place." While we do not view a hospital as a "suspicous place" per se, this
argument overlooks the totality of the circumstances and the fact that Dyar was taken involuntarily
from the accident scene to the hospital. We believe that the accident scene itself coupled with
Thompson's observations at the hospital constituted the "suspicious place" or the "suspicious
circumstances" leading to Dyar's lawful arrest. Thus, the circumstances surrounding his arrest were
sufficient to determine that Dyar was in a "suspicious place," as required by article 14.03(a)(1), and
"under circumstances which reasonably show that such [person has] been guilty of some . . . breach
of the peace." See Tex. Code Crim. Proc. Ann. art. 14.03(a)(1). 


CONCLUSION

 The circumstances surrounding Dyar's accident invoked article 14.03(a)(1) of the
Texas Code of Criminal Procedure and justified Trooper Thompson's decision to arrest him. See
id. Because we hold that the arrest was legal, the blood specimen taken pursuant to that arrest is
untainted. We affirm the trial court's orders.



 

 Mack Kidd, Justice

Before Justices Kidd, B. A. Smith and Puryear

Affirmed

Filed: July 26, 2001

Publish

1. Texas Department of Public Safety Sergeant Mark Spillers also went to the hospital and
questioned Dyar. Spillers corroborated that Dyar had slurred speech and smelled of alcohol. He also
noted that Dyar had red, glassy eyes. However, Spillers arrived after Thompson had already advised
Dyar he was under arrest. Therefore, Spillers's observations are not a factor to be considered in the
legality of the arrest.



inside); Sta