COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| JUAN M. PUENTES, | § | No. 08-23-00168-CR |
| Appellant, | § | Appeal from the |
| v. | § | County Court at Law Number One |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC#2020C07161) |

## MEMORANDUM OPINION

Appellant Juan M. Puentes was charged by information with driving a motor vehicle while intoxicated, second offense. Following the trial court's denial of Puentes's pretrial motion to suppress, he pleaded guilty to the lesser-included offense of driving while intoxicated. On appeal, Puentes brings one issue asserting the trial court erred in denying his motion to suppress. Finding no error, we affirm.

## BACKGROUND

In cause number 20200C07161, Puentes was charged by information with one count of driving while intoxicated, second offense. The State additionally charged Puentes, in cause number 20200C07151, with one count of accident involving damage to a vehicle in an amount less than

$200. Puentes filed a pretrial motion to suppress, which he amended several times, which was heard by two separate hearings.

### A. First motion to supress hearing

Puentes filed a motion to suppress largely contending that, due to a lack of probable cause, he was unlawfully arrested, and evidence was illegally obtained. Puentes specifically sought to suppress evidence resulting from his "unlawful detention, arrest, breath tests, consent and any statement that was gather [sic] illegally as well as any and all evidence seized or obtained as a result of the government's acts[.]" The trial court held a hearing on March 2, 2022. Omar Mendez, a deputy working for the El Paso County Sheriff's Office, testified he frequently assisted with DWI investigations when he was not otherwise performing patrol duties in Clint, Texas.[1] On August 21, 2020, Deputy Mendez was dispatched to the intersection of Estate Drive and North Loop Drive in El Paso County, at approximately 8:40 p.m., due to a two-vehicle motor vehicle accident (MVA). Arriving on scene, he was advised it was an alleged hit-and-run, and the second vehicle had left the scene. Mendez testified the fleeing vehicle was described as a red Toyota Camry passenger car with a single occupant. The description obtained included the vehicle's license plate number.

Mendez soon learned from his supervisor, Sergeant Monica Valera, that Clint police officers were transporting a driver they had detained for suspicion of fleeing the scene of a motor vehicle accident and driving while intoxicated. Mendez was instructed to meet Sergeant Valera at the patrol station. On arriving at the station, Sergeant Valera received Puentes from the detaining

---

[1] Through Deputy Mendez, the State introduced into evidence videos with footage from body cameras worn by Mendez and his supervisor, Sergeant Valera. Although the trial court admitted both videos into evidence, neither one is included in our appellate record. The parties neither references these videos in their briefs nor do they complain or raise an issue about the omission of the videos from our record.

officers, and she in turn released him to Mendez for him to conduct standardized field sobriety testing (SFST).

On initial contact, Deputy Mendez testified Puentes appeared unbalanced, his eyes were watery and bloodshot, his speech was slurred, he smelled of an unknown alcohol odor, and he soon urinated on himself. Deputy Mendez asked Puentes if he was involved in the accident and Puentes answered "yes." He asked Puentes whether he had left the accident and Puentes responded "yes." When asked why he left the scene, Puentes stated "out of instinct." After completing testing, Deputy Mendez concluded Puentes had displayed clues of intoxication and he was too impaired to drive. He placed Puentes under arrest for driving while intoxicated. Deputy Mendez testified he then read Puentes his *Miranda*[2] rights and escorted him into the station.

After the hearing ended, the trial court took the matter under advisement. On April 5, 2022, the court signed a written order denying Puentes's motion to suppress. It did not enter findings of fact and conclusions of law.

### B.  Second motion to suppress hearing

On November 30, 2022, a second suppression hearing was held on Puentes's "fourth Amended Motion to Suppress the Probable Cause Arresting Affidavit, Warrant based on Fatal Variance." At the start of the hearing, the court asked for a basis for the motion to suppress, as reference had been made to the earlier hearing. Defense counsel responded by pointing out that Sargent Valera had arrested Puentes, yet Deputy Mendez completed the arresting affidavit paperwork. In response, the State argued a two-part argument. First, that there was no need for a

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 444 (1966) (providing that, before a custodial interview, police are obligated to apprise a suspect of the right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed).

second hearing, urging the court had already denied the motion by its order of April 5, 2022. Second, that a purported defect in the arresting affidavit would not support a legitimate basis to suppress any evidence.

Puentes replied that the contested issues of the second hearing differed from those he had presented in his earlier motion. At the first hearing, he claimed he only argued two points: (1) whether sufficient probable cause supported his arrest; and (2) whether Deputy Mendez had read him his *Miranda* warnings. With his current motion to suppress, Puentes claimed the issue centered on whether the arresting complaint affidavit was defective. Responding once more, the State urged a denial of the motion without hearing additional evidence. The trial court denied the State's request and continued with the hearing.

Puentes called Rose Mary Hernandez, a Sergeant with the Clint Police Department, to testify. On the night of August 21, 2020, Sergeant Hernandez and another officer were in their patrol vehicle when she heard on their radio that a subject left the scene of an MVA. Reportedly, the car that fled had damage to its front end. Sergeant Hernandez testified that she and other officers of her agency soon located the vehicle described by dispatch. Other officers conducted the initial stop of Puentes. While Hernandez remained present, the other officer transferred custody of Puentes to the El Paso County Sheriff's deputies. At that point, Hernandez was not aware of any charges against Puentes. No further testimony was elicited.

Puentes next called Deputy Mendez to testify again. Deputy Mendez agreed that Sergeant Valera was the one who took Puentes over to the station where Mendez had been instructed to meet her. Mendez agreed that Puentes arrived in handcuffs. When Sergeant Valera arrived, she advised Deputy Mendez that she had the suspect of the MVA. After Mendez confirmed that he removed Puentes from Sergeant Valera's vehicle, defense counsel passed the witness. The State

4

asked no further questions of the witness. Puentes then asked the trial court to take judicial notice of the arresting probable cause affidavit attached to his motion, which it did.

In closing argument, Puentes urged the complaint affidavit was insufficient because it had only been notarized, it lacked a magistrate's signature, and Deputy Mendez did not swear under oath or affirmation to the veracity of its contents. Additionally, Puentes contended there was no arrest warrant for Puentes in the court's file. Lastly, Puentes asserted that Sergeant Valera was a material witness and not a notary public, therefore, she could not validly swear to the complaint affidavit. The State responded that the lack of magistrate's signature did not constitute a fatal variance. Additionally, the State contended the motion to suppress was not a proper vehicle to suppress evidence based on the purported error in a complaint affidavit because no constitutional violation was alleged, nor would it otherwise occur, as a result of such a deficiency.

The trial court denied the motion to supress by written order. It did not enter findings of fact or conclusions of law.

### C. Guilty plea

By a written plea offer, the State agreed to drop the DWI 2nd allegation. Puentes thereafter pleaded guilty to the lesser-included offense of driving while intoxicated. The trial court sentenced Puentes to 180 days' incarceration, suspended the sentence, and placed Puentes on community supervision for 13 months. Additionally, the trial court assessed a fine of $1,000, and ordered Puentes to complete 80 hours of community service.

Puentes appeals.

## SOLE ISSUE ON APPEAL

In his sole issue on appeal, Puentes contends the trial court abused its discretion in denying his motion to suppress. Puentes contends the four corners of the arrest affidavit lacked probable

cause, or any objectively factual elements of such, to support his arrest for DWI. He further argues he was never informed of his *Miranda* rights before being questioned by a Sheriff's deputy, and his unlawful arrest coupled with law enforcement's failure to administer *Miranda* rights was objectively unreasonable. Lastly, Puentes asserts Sergeant Valera created a fatal variance when she notarized the complaining affidavit, and this variance made the complaining affidavit fatally defective.

Liberally interpreting his sole issue, Puentes asserts three distinct arguments claiming the trial court abused its discretion in denying his motion to suppress. First, Puentes asserts the complaining affidavit failed to establish probable cause to support the warrantless arrest. Second, he contends the complaining affidavit contained a fatal defect. Third and finally, he claims he was not afforded his constitutional *Miranda* rights before custodial questioning.

We address each argument in turn.

## STANDARD OF REVIEW

Appellate courts review a trial court's ruling on a motion to supress under a bifurcated standard. *State v. Arellano*, 600 S.W.3d 53, 57 (Tex. Crim. App. 2020). A trial court's findings of historical facts and determinations of mixed questions of law and fact that turn on credibility and demeanor are afforded almost total deference if reasonably supported by the record. *See Sims v. State*, 569 S.W.3d 634, 640 (Tex. Crim. App. 2019). Nonetheless, "[w]e review de novo a trial court's determination of legal questions and its application of the law to the facts that do not turn upon a determination of witness credibility and demeanor." *Arellano*, 600 S.W.3d at 57.

When the trial court does not enter findings of fact and conclusions of law associated with its motion-to-suppress ruling, we infer the necessary fact-findings in support of such ruling if the evidence in the record (viewed in the light most favorable to the ruling) supports those implied

6

factual findings. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008). In this way, the prevailing party "is afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn form that evidence." *Id.* We may affirm a trial court's ruling on a motion to suppress if it is correct on any theory of law applicable to the case and it is supported by the record, even if that theory was not raised by the prevailing party in the trial court. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007).

## *MIRANDA* VIOLATION

We begin with Puentes's complaint asserting he was not informed of his *Miranda* rights before being questioned by a Sheriff's deputy. Initially, the State responds that Puentes's argument is not preserved for appellate review.

To preserve a complaint for appellate review, a party must present a timely request, objection or motion to the trial court stating specific grounds for the desired ruling unless the specific grounds are apparent from the context. *See* TEX. R. APP. P. 33.1(a)(1)(A). The purpose of requiring specificity is twofold: (1) to inform the trial court of the basis of the objection and give the court an opportunity to rule on it and (2) to give the opposing party the opportunity to respond to the complaint. *Resendez v. State*, 306 S.W.3d 308, 312 (Tex. Crim. App. 2009). Additionally, the complaint being raised on direct appeal must not vary from the complaint asserted at trial. *See Heidelberg v. State*, 144 S.W.3d 535, 537 (Tex. Crim. App. 2004) (en banc); *Knox v. State*, 934 S.W.2d 678, 687 (Tex. Crim. App. 1996) (finding nothing preserved for review if objection at trial does not comport with issue on appeal). Preservation of error requirements apply equally to alleged *Miranda* violations. *Allridge v. State*, 762 S.W.2d 146, 157 (Tex. Crim. App. 1988) (en banc).

In any of the various amendments to his motion to suppress, Puentes did not substantively urge either a *Miranda* violation or an Article 38.22[3] violation. Although the word "statements" appeared in a motion's title, the basis for suppression centered on his complaints about the arresting complaint affidavit, his warrantless arrest, and his claim that the arrest lacked probable cause. Puentes made no argument regarding a violation of his *Miranda* rights or the involuntariness of any statements he may have made to law enforcement. Additionally, at the suppression hearings, Puentes focused on whether the Sheriff's deputies or other law enforcement had probable cause to arrest Puentes, whether probable cause was articulated in the complaint affidavit, and whether the complaint affidavit was defective.

On this record, we conclude the trial court never had the opportunity to rule on any complaints concerning *Miranda* violations or the voluntariness of Puentes's statements. Moreover, even on appeal, Puentes has failed to articulate his complaint with specificity. He does not assert which statements were the result of a custodial interrogation and does not assert which statements should have been suppressed. Rather, Puentes simply asserts that Deputy Mendez conducted a custodial interrogation without first advising Puentes of his *Miranda* rights. Although he cites law governing *Miranda* and Article 38.22 violations, this is the extent of his argument concerning a possible *Miranda* violation.

Accordingly, because Puentes failed to communicate his complaint to the trial court, he has forfeited any error and preserved nothing for review. *See Swain v. State*, 181 S.W.3d 359, 365 (Tex. Crim. App. 2005) (en banc) (holding appellant failed to preserve a *Miranda* violation

---

[3] In Texas, Article 38.22 of the Code of Criminal Procedure codifies the required warning based on *Miranda v. Arizona*. *See* TEX. CODE CRIM. PRO. ANN. art. 38.22.

complaint when appellant only asserted global statements in his pretrial motion to suppress, not specifying which statements he sought to suppress, and did not sufficiently support his argument). Thus, we overrule this portion of Puentes's argument.

## THE COMPLAINT AFFIDAVIT

Next, Puentes argues the complaint affidavit contained a fatal variance because Sergeant Valera lacked authority to notarize it as she also served as a material witness in Puentes's arrest. He urges it was necessary for a magistrate to make a probable cause determination. Because no such finding occurred, he argues the complaint affidavit should have been suppressed.

Puentes supports his argument by citing to statutes that pertain to arrest warrants generally and to searches pursuant to a warrant. *See* TEX. CODE CRIM. PROC. ANN. arts. 15.01–.03. However, the current record indicates that Puentes was subjected to a warrantless arrest and none of the evidence was derived from the execution of a search warrant.

As for the requirements of a complaint, the Code of Criminal Procedure provides in relevant part:

1. It must state the name of the accused, if known, and if not known, must give some reasonably definite description of him.

2. It must show that the accused has committed some offense against the laws of the State, either directly or that the affiant has good reason to believe, and does believe, that the accused has committed such offense.

3. It must state the time and place of the commission of the offense, as definitely as can be done by the affiant.

4. It must be signed by the affiant by writing his name or affixing his mark.

TEX. CODE CRIM. PROC. ANN. art. 15.05. Here, the complaint affidavit contains Puentes's name and alleges a violation of Texas law by stating that Puentes committed the criminal offense of DWI, 2nd offense, on or about the 21st day of August 2020, by operating a 2001 Red 4 door Toyota

9

Camry, in a public place (the intersection of Estate Dr. and North Loop Dr., in El Paso County, Texas), "while intoxicated and at the time of the analysis provided a breath specimen of BrAC TO WIT: BrAC of 0.14/0.139." The affidavit further contains factual information in support of the complaint including Deputy Mendez's observations of Puentes on the occasion, his administration of a standardized field sobriety test, his findings pertaining to the number of clues observed, and finally, his consent to a breath analysis. The Complaint affidavit is signed by Deputy Mendez with his name printed underneath and notarized by "Monica Varela" as notary public. Accordingly, the complaint and associated complaint affidavit comply with the statutory requirements.

Puentes repeatedly states the complaint affidavit was defective because Sergeant Valera could not notarize the affidavit. Puentes fails to support this complaint with authority, and we have found none. He also asserts this defect required a magistrate to make a probable cause determination. Citing two cases, Puentes asserts that because there was no probable-cause determination or magistrate judge's signature on the complaint affidavit, the complaint affidavit itself is defective and should have been suppressed. *See Wheeler v. State*, 616 S.W.3d 858, 861 (Tex. Crim. App. 2021); *Dunn v. State*, 951 S.W.2d 478, 479 (Tex. Crim. App. 1997) (en banc). However, those cases are inapposite because they involved an arrest or search warrant that lacked an officer's or magistrate's proper signatures, and no such arrest or search warrant is at issue in this case. *See Wheeler*, 616 S.W.3d at 861 (suppression issue concerned lack of an officer's sworn oath before a magistrate in support of a search warrant); *Dunn*, 951 S.W.2d at 479 (suppression issue concerned lack of a magistrate's signature on an arrest warrant). Moreover, and most importantly, the complaint affidavit itself is not illegally obtained evidence subject to suppression under the exclusionary rule set forth in Article 38.23 of the Texas Code of Criminal Procedure because, standing alone, it does not constitute an infringement of a defendant's privacy rights or

10

property interests. *See Miles v. State*, 241 S.W.3d 28, 36 n.33 (Tex. Crim. App. 2007) ("Only those acts which violate a person's privacy rights or property interests are subject to the state or federal exclusionary rule.").

Accordingly, we reject this portion of Puentes's argument.

## THE WARRANTLESS ARREST

Next, Puentes argues the officers lacked probable cause to arrest him without a warrant. Puentes asserts the officers did not articulate any supporting facts to base their opinions but instead asserted mere conclusory statements.

Article 14.03(a) of the Code of Criminal Procedure authorizes a peace officer to make an arrest for breach of peace without a warrant (1) if there is probable cause and (2) the person is found in a suspicious place. *See* TEX. CODE CRIM. PROC. ANN. art. 14.03(a); *Dyar v. State*, 125 S.W.3d 460, 462–64 (Tex. Crim. App. 2003). "[P]robable cause for a warrantless arrest exists when facts and circumstances within the officer's knowledge and about which he or she has reasonably trustworthy information are sufficient to warrant a person of reasonable caution to believe that an offense was or is being committed." *Torres v. State*, 182 S.W.3d 899, 901 (Tex. Crim. App. 2005) (en banc). While probable cause requires more than mere suspicion, it requires far less evidence than the evidence needed to support a conviction. *Middleton v. State*, 125 S.W.3d 450, 460 (Tex. Crim. App. 2003) (en banc). The determination of whether a place is a "suspicious place" is a highly fact-specific analysis because "few, if any, places are suspicious in and of themselves." *Dyar*, 125 S.W.3d at 464-65,468. "Rather, additional facts available to an officer plus reasonable inferences from those facts in relation to a particular place may arouse justifiable suspicion." *Johnson v. State*, 722 S.W.2d 417, 421 (Tex. Crim. App. 1986) (en banc), *overruled on other grounds*, *McKenna v. State*, 780 S.W.2d 797 (Tex. Crim. App. 1989) (en banc).

11

One important factor common to most scenarios is that "[t]he time frame between the crime and the apprehension of a suspect in a suspicious place is short." *Dyar*, 125 S.W.3d at 468.

The Court of Criminal Appeals and other courts of appeals have found suspects lawfully arrested in "suspicious places" where: "(1) the suspect was arrested at a crime scene or somewhere linked to it, (2) shortly after a crime had taken place, and (3) the totality of facts known to the police officer objectively point to the suspect's guilt in the commission of a felony or other breach of the peace under 14.03(a)(1)." *State v. Mcguire*, No. PD-0984-19, 2024 WL 695765, at *4 (Tex. Crim. App. 2024); *see also Johnson*, 722 S.W.2d at 421; *Dyar*, 125 S.W.3d at 468. Moreover, courts have recognized public intoxication and driving while intoxicated as offenses constituting breaches of peace. *Gallups v. State*, 151 S.W.3d 196, 201 (Tex. Crim. App. 2004). Here, Sergeant Hernandez of the Clint Police Department arrived on scene where other officers had initiated a traffic stop of Puentes after locating his damaged vehicle. The vehicle matched the description and license plate number of the vehicle seen leaving the scene of a motor vehicle accident. After Puentes was transported to the El Paso County Sheriff's Office patrol station and Deputy Mendez administered field sobriety testing, Puentes was arrested for driving while intoxicated.

As for probable cause, it is uncontroverted that Deputy Mendez observed Puentes urinate on himself, walk unbalanced, exhibit slurred speech, have red blood shot eyes, and smell of an unknown alcohol odor. Additionally, Deputy Mendez then conducted standardized field sobriety tests on Puentes where he determined Puentes was impaired to be driving. Puentes also admitted to drinking and driving and fleeing the scene.

The totality of facts in this case were sufficient to show Puentes was found in a "suspicious place" and that an objectively prudent person had probable cause to believe that Puentes had

12

committed the offense of driving while intoxicated, a breach of the peace for the purposes of Article 14.03(a)(1).[4] *See Mcguire*, 2024 WL 695765, at *5; *Dyar*, 125 S.W.3d at 468 (concluding the hospital was a "suspicious place" when the officer, at the scene of the car accident, was informed the driver was taken to the hospital and the officer then viewed the driver as having slurred speech, red glassy eyes, and strong smell of alcohol); *see also Crowley v. State*, 842 S.W.2d 701, 704 (Tex. App.—Houston [1st Dist.] 1992, no pet.) (finding a suspect who committed a hit-and-run traffic collision and found in her garage was in a suspicious place for the purposes of Article 14.03(a)(1)). Accordingly, we overrule this final portion of Puentes's argument.

Having overruled each argument, we overrule Puentes's sole issue in its entirety.

## CONCLUSION

We affirm.

GINA M. PALAFOX, Justice

February 28, 2024

Before Alley, C.J., Palafox and Soto, JJ.

(Do Not Publish)

---

[4] Although Deputy Mendez did not actually see Puentes driving, he still had probable cause to arrest for public intoxication inasmuch as Puentes does not contest that he was intoxicated.

13